APPEAL NO. 20-1222

UNITED STATES COURT OF APPEALS

FOR THE EIGHTH CIRCUIT

---

B.W.C., J.R., MYKALA N. MARTIN, BRIAN ROBINSON, MICHAEL W. CHEEK, I.E.G.M., LINDA D. CHEEK, AMBER ROBINSON, W.B., ZACH BAKER, and AUDREY BAKER,

*Plaintiffs-Appellants*,

v.

RANDALL WILLIAMS, in his official capacity as Director of the Missouri Department of Health & Senior Services, CLEVER R-V SCHOOL DISTRICT, MILLER COUNTY R-III SCHOOL DISTRICT, BOBBIE GRANT, in his individual capacity, CHRISTINA STAMPER, in her individual capacity, CROSSROADS ACADEMY-CENTRAL STREET, KARIS PARKER, in her individual capacity, EVA COPELAND, in her individual capacity, ERIC S. SCHMITT, in his official capacity as Attorney General of Missouri,

*Defendants-Appellees*,

---

On Appeal from the United States District Court
for the Western District of Missouri
The Honorable Judge Howard F. Sachs
Case No. 4:19-cv-00682-HFS

---

**APPELLANTS' OPENING BRIEF**

---

LINUS L. BAKER
6732 West 185th Terrace
Stilwell, Kansas 66085
913.486.3913
linusbaker@prodigy.net
*Attorney for Plaintiffs/Appellants*

**_Oral Argument is Requested_**

# SUMMARY OF CASE AND REQUEST FOR ORAL ARGUMENT

The Plaintiffs-Appellants ("Parents") are subject to a regulatory scheme in Missouri regarding mandatory vaccinations as a condition for a school education. The scheme does allow a parent to opt out to vaccines on religious grounds by providing a written religious objection to a school administrator. In order to do this a Parent must use a pre-written agency document called "Form 11" which contains a message the Parent does not wish to convey to the school. The Parent must then obtain this document at a local health department where she is subjected to efforts to dissuade her from exercising her religious beliefs. Parents challenge the application of a Missouri law and an agency regulation for violating the First and Fourteenth Amendments including: (1) free exercise of religion; (2) first amendment speech; (3) a child's bodily integrity and autonomy; (4) the parental right to consent, make medical decisions, and to direct the upbringing of her children according to a religious conviction; (5) equal protection; and (6) the right to an education. The court below entered orders denying their motion for preliminary injunction and later dismissing all of the Parents' claims. The Parents appealed.

This case concerns important constitutional rights including free speech, free exercise of religion, expressive association, equal protection, and due process. Because of the important rights at stake, the Parents request oral argument of 30 minutes.

i

## CORPORATE DISCLOSURE STATEMENT

Plaintiffs-Appellants, pursuant to Federal Rule of Civil Procedure 7.1, hereby state as follows: they are individuals and not corporations and have no parent companies.

# TABLE OF CONTENTS

SUMMARY OF CASE AND REQUEST FOR ORAL ARGUMENT .........i

CORPORATE DISCLOSURE STATEMENT ............................................ii

INTRODUCTION..................................................................................... 1

JURISDICTIONAL STATEMENT ........................................................ 3

STATEMENT OF THE ISSUES............................................................. 4

STATEMENT OF THE CASE ................................................................ 7

I.    The Parents ................................................................................. 7

II.   Agency Regulation of the Parents' Private Religious Speech ........ 8

III.  Form 11 ..................................................................................... 10

IV.   The Challenged Laws................................................................. 10

V.    The Parents' Lawsuit ................................................................ 11

VI.   The District Court's Orders ...................................................... 12

SUMMARY OF ARGUMENT ............................................................. 12

STANDARD OF REVIEW.................................................................... 17

ARGUMENT ........................................................................................ 17

I.    "Modest Advocacy" and Location of the Government Message
      Within the Parents' Speech is Not a Factor for Compelled
      Speech.......................................................................................18

II.   The Parents not only state claims that Movax Law violates
      their constitutional rights, but show they deserve a
      preliminary injunction to stop ongoing, irreparable harm. ..........19

      A.    Movax Law compels the Parents' speech as-applied............20

1. The Parents' Private Communication to a School Administrator is protected speech. ...................................21

2. Movax Law compels the Parents' speech, not conduct. ........................................................................22

3. Movax Law compels the Parents to author content they object to. ......................................................24

4. Movax Law deserves strict scrutiny for compelling the Parents to author Form 11 with content they object to. ........................................................................25

B. The Form 11 requirement bans speech based on content and viewpoint as-applied. ....................................35

C. Movax Law compels expressive association as-applied. ......40

D. Movax Law violates free exercise as-applied. ......................41

E. Movax Law violates equal protection as-applied. ...............48

F. Movax Law violates the unconstitutional conditions doctrine as applied. ..............................................49

G. As Interpreted by Missouri 167.181.3 and 19 CSR 20-28.010(1)(C)(2) allow unbridled discretion. ..........................50

H. Movax Law fails strict scrutiny as-applied. .........................53

CONCLUSION ........................................................................56

CERTIFICATE OF COMPLIANCE with rule 32(a) .............................58

CERTIFICATE OF DIGITAL SUBMISSION ........................................59

CERTIFICATE OF SERVICE.................................................................60

ADDENDUM ........................................................................61

# TABLE OF AUTHORITIES

**Cases**

*Act Now to Stop War & Racism Coalition v. District of Columbia,*
846 F.3d 391 (D.C. Cir. 2017)..........................................53

*Anderson v. City of Hermosa Beach,*
621 F.3d 1051 (9th Cir. 2010) ...................................21, 32

*Animal Legal Defense Fund v. Wasden,*
__ F.3d __, No. 15-35960, 2018 WL 280905,
(9th Cir. Jan. 4, 2018) ...................................................22

*Ashcroft v. ACLU,*
542 U.S. 656 (2004) ......................................................56

*Axson-Flynn v. Johnson,*
356 F.3d 1277 (10th Cir. 2004) ..................... 42, 43, 44, 45

*Bourgeois v. Peters,*
387 F.3d 1303 (11th Cir. 2004) ...............................16,49

*Boy Scouts of America v. Dale,*
530 U.S. 640 (2000) ...........................................11, 15,55

*Branson Label, Inc. v. City of Branson,*
793 F.3d 910 (8th Cir. 2015) ....................................5,17

*Brown v. Entertainment Merchants Association,*
564 U.S. 789 (2011) .....................................................55

*Brush & Nib Studio, LC v. City of Phoenix,* 6448 P.3d 890 (Ariz.
2019) ................................................... 23, 24,37, 55, 56

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,*
508 U.S. 520 (1993) .......................................5,6, 15, 47

*Church on the Rock v. City of Albuquerque,*
84 F.3d 1273 (10th Cir. 1996) .....................................36

*City of Boerne v. Flores,* 7521 U.S. 507 (1997)..................16, 54

Case 4:20-cv-00003-HFS   Document 27-1   Filed 03/30/20   Page 6 of 98

*City of Cleburne v. Cleburne Living Center,*
    473 U.S. 432 (1985) ....................................................... 48

*Clark v. Jeter,*
    486 U.S. 456 (1988) ................................................... 5, 48

*Cressman v. Thompson,*
    *798 F.3d 938 (10th Cir. 2015)* ...................................... 21

*Cruzan v. Director, Mo. Dept. of Health,*
    497 U. S. 261 (1990) ................................................. 4, 13

*Cude v. State,*
    237 Ark. 927, 377 S. W. 2d 816 (1964) ......................... 47

*Employment Division v. Smith,*
    494 U.S. 872 (1990) ................................... 44, 45, 47, 54

*e-ventures Worldwide, LLC v. Google, Inc.,*
    No. 214CV646FTMPAMCM, 2017 WL 2210029
    (M.D. Fla. Feb. 8, 2017) ............................................ 29

*Evergreen Association, Inc. v. City of New York,*
    740 F.3d 233 (2d Cir. 2014) ........................................ 26

*Forsyth County v. Nationalist Movement,*
    505 U.S. 123 (1992) ............................................ 6, 51, 52

*Fraternal Order of Police Newark Lodge No. 12 v. City of Newark,*
    170 F.3d 359 (3d Cir. 1999) ........................................ 44

*Frudden v. Pilling,*
    742 F.3d 1199 (9th Cir. 2014) ..................................... 34

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal,*
    546 U.S. 418 (2006) ................................................... 55

*Griswold v. Connecticut,*
    381 U.S. 479, 485 (1965) ........................................... 47

*Groswirt v. Columbus Dispatch,*
    238 F.3d 421 (6th Cir. 2000) .......................................................... 34

*Guertin v. State,*
    912 F.3d 907 (6th Cir. 2019) ....................................................... 46

*Harris v. Quinn,*
    134 S. Ct. 2618 (2014) .................................................................... 38

*Hosanna-Tabor Evangelical Lutheran Church & School v. EEOC,*
    565 U.S. 171 (2012) ......................................................................... 54

*Hurley v. Irish-American Gay, Lesbian & Bisexual*
    *Group of Boston,*
    515 U.S. 557 (1995) ............................................................. *passim*

*Jacobson v. Massachusetts,*
    197 U.S. 11 (1905) ................................................................... 45, 46

*Janus v. American Federation of State, County, & Municipal*
    *Employees, Council 31,*
    138 S. Ct. 2448 (2018) .................................................................... 56

*Jian Zhang v. Baidu.com Inc.,*
    10 F. Supp. 3d 433 (S.D.N.Y. 2014) ......................................... 20, 28

*Johnson v. Minneapolis Park & Recreation Board,*
    729 F.3d 1094 (8th Cir. 2013) ..................................................... 7, 17

*Kennedy v. Bremerton School District,*
    139 S. Ct. 634 (2019) ...................................................................... 54

*Kolender v. Lawson,*
    461 U.S. 352 (1983) ..................................................................... 6, 50

*Langdon v. Google, Inc.,*
    474 F. Supp. 2d 622 (D. Del. 2007) ........................................... 29, 34

*La'Tiejira v. Facebook, Inc.,*
    272 F. Supp. 3d 981 (S.D. Tex. 2017) ............................................ 29

Case 4:20-cv-00003-HFS   Document 27-1   Filed 03/30/20   Page 8 of 98

*Lawrence v. Texas,*
    539 U.S. 558 (2003) ........................................................ 46

*Lee v. Weisman,*
    505 U.S. 577 (1992) ........................................................ 42

*Lefkowitz v. Cunningham,*
    431 U.S. 801 (1977) ........................................................ 49

*Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Commission,*
    138 S. Ct. 1719 (2018) .................................... 6, 42, 47, 56

*Matal v. Tam,*
    137 S. Ct. 1744 (2017) .................................................... 40

*McCaffree Financial Corporation v. Principal Life Insurance Co.,*
    811 F.3d 998 (8th Cir. 2016) .......................................... 19

*McDermott v. Ampersand Publishing, LLC,*
    593 F.3d 950 (9th Cir. 2010) .......................................... 41

*McGlone v. Cheek,*
    534 F. App'x 293 (6th Cir. 2013) .................................... 20

*Miami Herald Publishing Company v. Tornillo,*
    418 U.S. 241 (1974) ................................................. 20, 33

*Miller v. Reed,*
    176 F.3d 1202 (9th Cir. 1999) ........................................ 45

*Minneapolis Star & Tribune Co. v. Missouri Commissioner
    of Revenue,*
    460 U.S. 575 (1983) ........................................................ 22

*Missouri Citizens Concerned for Life, Inc. v. Swanson,*
    692 F.3d 864 (8th Cir. 2012) ..................................... 6, 17

*Murphy v. Matheson,*
    742 F.2d 564 (10th Cir. 1984) ........................................ 50

*National Institute of Family & Life Advocates v. Becerra,*
    138 S. Ct. 2361 (2018) .................................................... 37

*Obergefell v. Hodges,*
    135 S. Ct. 2584 (2015) ................................................................. 37

*Pacific Gas & Electric Co. v. Public Utilities Commission*
    *of California,*
    475 U.S. 1 (1986) ............................................................... *passim*

*Parham v. J.R.,*
    442 U.S. 584 (1979) ..................................................................... 14

*Perry v. Sindermann,*
    408 U.S. 593 (1972) ................................................................. 6, 16

*Planned Parenthood of Southeastern Pennsylvania v. Casey,*
    505 U.S. 833 (1992) ..................................................................... 13

*Plyler v. Doe,*
    457 U.S. 202 (1982) ..................................................................... 48

*Police Department of City of Chicago v. Mosley,*
    408 U.S. 92 (1972) ................................................................... 9, 49

*R.A.V. v. City of St. Paul,*
    505 U.S. 377 (1992) ..................................................................... 40

*Reed v. Town of Gilbert,*
    135 S. Ct. 2218 (2015) ............................................................ 5, 36

*Riley v. National Federation of the Blind of North Carolina, Inc.,*
    487 U.S. 781 (1988) ......................................... 20, 26, 30, 32, 37, 39

*Roberts v. United States Jaycees,*
    468 U.S. 609 (1984) ..................................................................... 40

*Roe v. Wade,*
    410 U.S. 113 (1973) ..................................................................... 46

*Rogers v. City of Little Rock, Ark.,*
    152 F.3d 790 (8th Cir. 1998) ........................................................ 1

*Rosenberger v. Rector & Visitors of University of Virginia,*
    515 U.S. 819 (1995) .............................................................. 37, 39

ix

*Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*,
    547 U.S. 47 (2006) ...................................................... 15, 24, 41, 44

*Simon & Schuster, Inc. v. Members of New York Crime
    Victims Board*,
    502 U.S. 105 (1991) ........................................................ 32

*Southworth v. Board of Regents of the University of
    Wisconsin System*,
    307 F.3d 566 (7th Cir. 2002) ........................................... 53

*Stuart v. Camnitz*,
    774 F.3d 238 (4th Cir. 2014) ........................................... 26

*Telescope Media Group v. Lucero*,
    936 F.3d 740 (8th Cir. 2019) ................................. 23, 36, 38, 45, 55

*Thornburgh v. Am. Coll. of Obstetricians & Gynecologists*, 476
    U.S. 747 (1986) ........................................................... 46

*Time Warner Cable Inc. v. Federal Communications Commission*,
    729 F.3d 137 (2d Cir. 2013).............................................. 31

*Time Warner Cable, Inc. v. Hudson*,
    667 F.3d 630 (5th Cir. 2012) ........................................... 28

*Troxel v. Granville*,
    530 U.S. 57 (2000) ....................................................... 14

*Tucker v. California Department of Education*,
    97 F.3d 1204 (9th Cir. 1996) ........................................... 39

*Turner Broadcasting System, Inc. v. Federal Communications
    Commission*,
    512 U.S. 622 (1994) ..............................2, 23, 27, 28, 30, 31, 32, 40

*Turner v. Lieutenant Driver*,
    848 F.3d 678 (5th Cir. 2017) ........................................... 22

*United States ex rel. Ambrosecchia v. Paddock Laboratories, LLC*,
    855 F.3d 949 (8th Cir. 2017) ........................................... 17

x

*United States Telecom Association v. Federal Communications Commission,*
825 F.3d 674 (D.C. Cir. 2016)...........................................................18

*United States v. O'Brien,*
391 U.S. 367 (1968) .........................................................................27

*United States v. Playboy Entertainment Group, Inc.,*
529 U.S. 803 (2000) .........................................................................55

*Village of Arlington Heights v. Metropolitan Hous. Dev. Corp., 429 U.S. 252 (1977)* ...................................................................................6

*Wandering Dago, Inc. v. Destito,* 879 F.3d 20 (2d Cir. 2018) ................40

*Wooley v. Maynard,*
430 U.S. 705 (1977) ..............................................................24, 32, 33

*Wooten v. Pleasant Hop R-VI Sch. Dist.,*
139 F. Supp. 2d 835 (W.D.Mo.2000) .................................................1

*World Peace Movement of America v. Newspaper Agency Corporation,*
879 P.2d 253 (Utah 1994).............................................................11, 25

## Regulations

19 CSR 20-28.010 ...................................................................... *passim*

## Statutes

28 U.S.C. § 1291 ..................................................................................3

28 U.S.C. § 1331 ..................................................................................3

28 U.S.C. § 1343 ..................................................................................3

National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa-1 to -34 ..............................................................................7, 14

Mo. Stat. § 167.031..........................................................................6, 7, 8

Mo. Stat. § 167.181 ............................................................. *passim*

Mo. Stat. § 167.187 ................................................................. 12

Mo. Stat. § 192.072 .............................................................. 7, 13

**Constitutions**

United States Constitution, amendment I ..................................... *passim*

United States Constitution, amendment XIV ...5, 6, 11, 15, 16, 48, 49, 50

# INTRODUCTION

Missouri[1] imposes conditions upon the Parents in order for their children to receive the benefit of an education. "It is well-established that a student's entitlement to public education is a protected property interest…." *Wooten v. Pleasant Hop R-VI Sch. Dist.*, 139 F. Supp. 2d 835, 840 (W.D.Mo.2000). The children must forego their bodily integrity in receiving numerous injections into their bodies of which the Parents must consent to under penalty of law. Missouri violates due process in its requirements. *See Rogers v. City of Little Rock, Ark.*, 152 F.3d 790, 795-96 (8th Cir. 1998) (substantive due process right to bodily integrity).

The parents have religious beliefs, but Missouri has applied its religious accommodation law regarding vaccinating (the "Missouri statutory scheme" or "Movax Law") to hamper this. For as Missouri interprets it, Movax Law requires the students to forego their human autonomy for the benefit of a school education. Parents must involuntarily consent under penalty of law. In order to avoid that result Movax Law then requires the parents to undergo a forced indoctrination session in order to religiously opt out of vaccine injections.

The Missouri statutory scheme requires parents to involuntarily consent to multiple vaccine injections over years and with risk of permanent harm. Involuntary consent is no consent. "We have never

---

[1] "Missouri" refers to all Defendants-Appellees unless context dictates otherwise.

retreated … from our recognition that any compelled intrusion into the human body implicates significant, constitutionally protected … interests." *Missouri v. McNeely*, 569 U.S. 141, 159 (2013). "Individuals possess a constitutional right to be free from forcible intrusions on their bodies against their will, absent a compelling state interest." *Planned Parenthood Sw. Ohio Region v. DeWine*, 696 F.3d 490, 506 (6th Cir. 2012).

As to exercising religion, Missouri requires the Parents to speak their private religious objection to a school administrator, but its agency requires that the expression be made to the school administrator on a scripted government form which contains a government message. "At the heart of the First Amendment lies the principle that each person should decide for himself or herself the ideas and beliefs deserving of expression." *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 641 (1994). From this principle comes "the fundamental rule of protection under the First Amendment, that a speaker has the autonomy to choose the content of his own message." *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 573 (1995). Yet Missouri violates this rule with respect to the Parents who are prohibited from communicating their religious objections to vaccines to the principal – and thereby exercising their religion – unless they use a Department of Human and Senior Services (DHSS) form containing an antagonistic DHSS message – that can only be obtained as a *de facto* speech permit from a local health department after undergoing an indoctrination session.

2

The district court characterized Parent's treatment as a last chance "salesmanship" opportunity and to those who "needed it the most." The lower court held the government's forced message into the Parent's communication to the school was permissible because it was "modest advocacy." The district court's explanation reinforces the conclusion that it completely misapprehended the law as to compelled speech. Instead, the lower court viewed Form 11 similarly to an application made to DHSS.

The Parents and their children deserve protection. Some children have been expelled and are waiting to have their right to an education restored. To alleviate this ongoing, irreparable harm, the Parents ask this Court to reverse the district court's order dismissing all claims and instruct it to issue a preliminary injunction to protect the Parents and their children from Missouri's application of Movax Law.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction to hear this case under 28 U.S.C. §§ 1331 and 1343 because the Parents raised claims under the First and Fourteenth Amendments. This Court has jurisdiction to review this appeal under 28 U.S.C. § 1291 because the district court entered an order on January 30, 2020, dismissing the remainder of all claims and entered a Clerk's final judgment which the Parents filed a notice of appeal on January 30, 2020.

# STATEMENT OF THE ISSUES

1. *Bodily Autonomy*. Movax Law makes it unlawful for a parent to not consent to the violation of her school aged child's bodily integrity. School aged children in Missouri must attend school. In order to do so the child must be vaccinated. And to be vaccinated a parent must give consent. But because there are criminal penalties consent under Movax Law is involuntary. Then, in order for a parent to religiously opt-out of vaccinating, she must write a religious objection to a school administrator using a pre-written form which contains a message these parents do not want to convey. And in order to obtain this form, parents must then endure personal and targeted indoctrination efforts designed to persuade that parent not to exercise her religious convictions. Can these parents and children challenge these requirements?

*Missouri v. McNeely,* 569 U.S. 141 (2013)
*Cruzan v. Dir., Missouri Dep't of Health,* 497 U.S. 261 (1990)
*Schmerber v. California*, 384 U.S. 757 (1966)

2. *First Amendment*: Does Movax Law violate the First Amendment as-applied when it: (a) forces a parent to host, in her private communication to a school administrator, a government message which the parent does not want to carry; (b) bans a parent from communicating her own unique religious beliefs regarding vaccine injections to that school administrator; and burdens her religious exercise of her beliefs by requiring she travel to an indoctrination session designed to persuade

her not to exercise her religious belief, as a condition to exercise her religion or to religiously speak?

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557 (1995)
*Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015)
*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993)
U.S. Const., amend. I

3. *Equal Protection*. Does Movax Law violate equal protection as-applied when it forces a parent to communicate to a school administrator using a form that declares that her religious convictions are merely a preference, rather than a need, and urges her not to exercise her religious beliefs while a parent utilizing a medical exemption to vaccinating is told her reason for the exemption is a need and she is not urged to vaccinate her child? Does the DHSS regulation requiring only parents exercising a religious objection to travel to a local health department and then undergo hostile indoctrination "education" while other parents, particularly those utilizing the medical exemption, are not similarly required to undergo the same treatment violate equal protection?

*Clark v. Jeter*, 486 U.S. 456 (1988)
*Police Dept. of City of Chi. v. Mosley*, 408 U.S. 92 (1972)
U.S. Const., amend. XIV
19 CSR 20-28.010

4. *Unconstitutional Conditions*. Does Movax Law violate the unconstitutional conditions doctrine as-applied when it conditions the child's right to an education and a parents' First Amendment right to

speak her religious views about vaccinating on their willingness to forfeit their rights to bodily integrity and be free from government-compelled speech, to freely exercise their religion, and to equal protection of the laws?

*Perry v. Sindermann*, 408 U.S. 593 (1972)
19 CSR 20-28.010
Mo. Stat. §§ 167.181 & 167.031

5. *Unbridled Discretion*. Is Movax Law invalid as applied under the unbridled discretion doctrines because it allows DHSS to regulate a parent's religious speech without providing any limitations or guidance?

*Kolender v. Lawson*, 461 U.S. 352 (1983)
*Forsyth Cty. v. Nationalist Movement*, 505 U.S. 123 (1992)
U.S. Const., amend. I and XIV
Mo. Stat. § 167.181 and 19 CSR 20-28.010

6. *Targeted Hostility*. Is 19 CSR 20-28.010(1)(C)(2) unconstitutional as applied in being enacted and enforced with the express purpose of targeting for hostile treatment the religious viewpoints of the Parents?

*Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Comm'n,* 138 S. Ct. 1732 (2018)
*Church of the Lukumi Babalu Aye, Inc. v. Hialeah,* 508 U.S. 520 (1993)
*Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.,* 429 U.S. 252 (1977)

7. *Preliminary Injunction*. Should a preliminary injunction issue?

*Minn. Citizens Concerned for Life, Inc. v. Swanson*, 692 F.3d 864 (8th Cir. 2012)

6

# STATEMENT OF THE CASE

## I.    The Parents

The parents and their school aged children are all subject to Missouri statute 167.031 RSMo which is Missouri's compulsory school statute. A.56. In conjunction with a mandatory school requirement, Section 167.181 requires these school aged children to be repeatedly vaccine injected over a period of years in order to obtain the benefit of a free education. A.26-29, 31(¶72). Vaccines mandated as a condition to attend school by Missouri are all prophylactic – they are not urgent or medically necessary for a child. A.32 (¶77). Vaccine injections can create permanent harm to the child as recognized by the National Childhood Vaccine Injury Act. A.32 (¶77).

Missouri law recognizes in one respect a parent's right to provide informed consent to medical treatment for a child and particularly vaccinating. A.4 (¶4). Under Missouri statute §192.072 all "educational material" must contain the information regarding possible risks and benefits and requirements under the National Childhood Vaccine Injury Act which is designed so that parents can provide "informed consent associated with childhood vaccines." A.4 (¶4).

Despite recognizing a parent's right to be informed and provide informed consent, Section 167.061 makes it a Class C misdemeanor for violating 167.031. A.56. Section 161.187.2 makes it "unlawful for any parent or guardian to refuse or neglect to have his child immunized as

required by this section, unless the child is properly exempted." A.56. The combination of 167.031 (compulsory school statute), 167.061 (Class C misdemeanor for violating 167.031) and 161.187 eviscerates parental consent, as well as informed consent, and substantially interferes with the Parents' right to make a medical decision for each of their school aged children by impermissibly criminalizing the right of a parent not to give consent to vaccinations of a child. A.70.

## II. Agency Regulation of the Parents' Private Religious Speech

DHSS promulgated a regulation in 19 CSR 20-28.010(1)(C)(2) that impermissibly modifies the Missouri statute Section 167.181.3 requirement of a private religious written communication from the parent to the school administrator. A.2,38,51,104. In 19 CSR 20-28.010(1)(C)(2) DHSS enacted a modified requirement that the statutory 167.181.3 parent's private written statement to the school administrator "must be provided on an original Department of Health and Senior Services' form Imm.P.11A." A.170. "Imm.P.11A" is referred to as "Form 11" and under the DHSS regulation is the parent's substituted statutory communication to the school administrator under 167.181.3. A.70.

DHSS formerly made its Form 11 available to use by allowing it to be directly downloaded from its online website prior to January of 2016. A.26(¶41). But beginning in 2016, DHSS stopped publishing this form in the Missouri Code of State Regulations (CSR). It then separately

published the form on its website with the watermark "SAMPLE" so it could not be used by parents. A.26(¶41). DHSS changed its regulation to require that the parent's religious statement to the school be made on an "original" form DHSS calls an original "cardstock." A.6-7(¶9); A.45 (¶123).

By requiring an "original" Form 11, DHSS then required parents to schedule appointments and to travel to a local health department to obtain this "original" form. A.7 (¶9); A.11 (¶16); A.26 (¶42). Then parents asking for the Form are subjected to a requirement to watch a pro-vaccine video followed by a health department nurse interrogating the Parent regarding their religious views specifically designed to influence the Parent not to exercise her religious objection. A.7 (¶9); A.11 (¶16); A.26 (¶42). In a publication from the Pettis County Health Center it explains what a parent must do to obtain the Form 11: "We are adapting new changes to our exemption policy. Beginning JUNE 1, 2019 exemptions will be handed out by **SCHEDULED** appointments on Wednesday **ONLY**. Each appointment will consist of watching a short video along with sitting down with a nurse and discussing the reasons for seeking an exemption followed by an educational session with the nurse." A.130. In Bates County, Parent was told she was required to watch a vaccination video. A.11. Parent felt extremely uncomfortable being subjected to the personal confrontation. A.12. Each local health department creates its

9

own requirements which are arbitrary and create varying policies as to obtaining Form 11. A.41 (¶109).

## III. Form 11

19 CSR 20-28.010(1)(C)(2) requires that the Parent's statutory 167.181.3 statement to the school administrator must be made on Form 11. A.223. Form 11 does not allow a Parent to state her beliefs in the manner she prefers. A.25. The Form demeans religious beliefs and relegates them to a lesser status. A.25. The Form pre-writes all parent's religious objection statements to the school administrator and then contains an extensive DHSS message at the top. A.24.

Not all parents of school aged children are required to undergo the indoctrination ("educational") requirements as these appellant Parents. A.91. Parents exercising a medical exemption for a child are not required to travel to a local health department or be subjected to the things the Parents are subjected. A.91. Moreover, in the medical exemption form DHSS does not attempt to persuade those parents to change their minds. A.225. The medical form recognizes that exemption as a need while treating the religious exemption as something other than a need – a preference. A.14; 226.

## IV. The Challenged Laws

Under Missouri statutes 167.061 and 161.187.2, Parents are subjected to a forced consent to vaccinating their children under penalty of law. In order to avoid that result, under 19 CSR 20-28.010(1)(C)(2),

the parent must use a government scripted message as their communication to a school administrator. And to obtain the right to speak to the school administrator the Parent must undergo various targeted hurdles specifically designed to dissuade the Parent from her religious exercise. As to Parents Zach and Audrey Baker, their three children were expelled from the Crossroads' Charter school January 7, 2020, because the defendant Crossroads school would not recognize their prior written religious objection statement to the school principal. A.16; 22. Because the Bakers' objection was not made on an "original" Form 11 Crossroads expelled the children who remain out of school.

## V.     The Parents' Lawsuit

The Baker plaintiffs had filed a motion for a temporary restraining order which defendants agreed to a restraining order allowing W.B. to remain in school attendance pending the dispositive rulings of the lower court.

The petition was later amended to add other parents and their children who were experiencing the same treatment in other school districts in Missouri. The parents assert six fundamental and intertwined rights: (1) free exercise of religion; (2) first amendment speech; (3) a child's bodily integrity and autonomy; (4) the parental right to consent, make medical decisions, and to direct the upbringing of her children according to a religious conviction; (5) equal protection; and (6) the right to an education.

11

The Parents challenged 167.061 and 161.187.2 as together they eviscerate the fundamental right to provide informed consent to vaccine injections. The Parents also challenged 167.181.3, in conjunction with challenging the DHSS regulation 19 CSR 20-28.010(1)(C)(2), because 167.181.3 does not authorize DHSS to enact regulations on a parent's religious speech, and further the regulation impermissibly modifies 167.181.3. The Parents further contend that if 167.181.3 does authorize 19 CSR 20-28.010(1)(C)(2), along with DHSS practices in obtaining Form 11, it impermissibly burdens religion, restrict the Parent's religious speech to a school administrator, subjects them to targeted hostility as well as treating them less favorably than other parents, particularly other parents exercising a medical exemption.

## VI.  The District Court's Orders

The Parents sought prompt relief by requesting a temporary restraining order / preliminary / permanent injunction. A.163. After briefing, the district court did not conduct a hearing on the injunction motion and issued an Order denying the relief. A.54 (ECF No. 49). Months later, the district court entered orders granting Appellees' motions to dismiss all claims. *See* A.213-218. The Parents appealed. A. 221.

## SUMMARY OF ARGUMENT

Missouri has a statutory scheme requiring a child's body to be invaded repeatedly over years with documented risks to health which are

against the religious beliefs of these Parents. There is an insufficient state justification. Vaccine injections are not a medical need for any child. Each vaccine has documented risks to a child. The vaccination scheme is not one of general applicability. The Missouri statute provides for a simple private written communication from a parent to a school administrator, but its agency DHSS has hijacked that communication censuring the parent's religious speech while compelling them to host an agency message. The agency further targets the particular parents for hostile treatment in creating a prior restraint of speech in what is otherwise a religious speech licensing scheme: requiring parents to travel to obtain an "original" form where these parents must endure a specific indoctrination session at a local health department in order to obtain this original form.

*Bodily Autonomy*.

Missouri Vax law violates the Parents' substantive due process rights. On the one hand Missouri law mandates that parents are provided enough information under Missouri statute 192.072 to provide informed consent and yet on the other eviscerates it with requiring, under penalty of law, consent to vaccinating in view of mandatory school attendance. There are "limits on governmental power to mandate medical treatment." *Planned Parenthood of Southeastern Pennsylvania v. Casey,* 505 U.S. 833, 857 (1992). Individuals are entitled to refuse lifesaving medical treatment. *Cruzan v. Director, Mo. Dept. of Health*, 497 U. S. 261, 279

(1990). There is a "fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Troxel v. Granville,* 530 U.S. 57, 66 (2000). Missouri might have "constitutional control over parental discretion in dealing with children" but only "when their physical or mental health is jeopardized" *Parham v. J.R.,* 442 U.S. 584, 603 (1979). Vaccine injections are not a medical necessity for any child. And vaccine injecting comes at a documented risk to a child. *See* National Childhood Vaccine Injury Act.

*Free Speech*. This case is not merely about the parents' speech but a hybrid of religion and speech – religious speech. The government may not "compel [an individual] to utter what is not in his mind." *W. Va. Bd. of Educ. v. Barnette*, 319 U.S. 624, 634 (1943). Doing so interferes with "the fundamental rule of protection under the First Amendment" that speakers have "the autonomy to choose the content of [their] own message." *Hurley*, 515 U.S. at 573. Missouri censures the Parents ability to create her own unique and private religious communication to a school administrator through its Form 11 requirements while parasitically requiring each parent to host in that private communication antagonistic DHSS messaging.

Just as the government cannot compel speech, it cannot ban speech. But 19 CSR 20-28.010(1)(C)(2) does this too: it forbids the Parents' desired private religious statement to the school principal.

14

*Expressive Association*. Missouri further "impair[s]" the Parents' ability "to express [their] views" on bodily integrity and vaccinations by compelling expressive association. *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 648 (2000). It forces the Parents to "join together and speak" with others – namely DHSS – who does not share their expressive purpose in God's design for natural immunities. *Rumsfeld v. Forum for Acad. & Inst'l Rights, Inc.*, 547 U.S. 47, 68 ("*FAIR*") (2006).

*Free Exercise*. In compelling and banning religious speech, Missouri also violates the Parents' free exercise rights, applying Movax Law in a manner that is neither neutral nor generally applicable – but a religious gerrymander, targeting only the religious beliefs of the Parents. *See Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 546 (1993).

*Equal Protection*. Missouri conduct also violates equal protection by treating similarly situated persons differently. Not all parents of students must undergo vaccination indoctrination. Not all parents exercising an exemption to vaccine injecting are so subjected – only the Parents exercising a religious exemption are targeted for this unfavorable treatment.

*Unconstitutional Conditions*. In all these ways, Missouri conditions the child's right to an education with a forfeiture of their bodily autonomy and the Parent's right to withhold consent to vaccinating. It also conditions the Parents' First Amendment rights to privately speak to a

school administrator, and in the manner they desire, on their willingness to forfeit their rights to be free from government-compelled speech, to freely exercise their religion, and to equal protection of the laws. States cannot condition the exercise of one constitutional right on the forfeiture of other constitutional rights in an attempt to do indirectly what they cannot do directly. *Bourgeois v. Peters*, 387 F.3d 1303, 1324 (11th Cir. 2004); *see also Perry v. Sindermann*, 408 U.S. 593, 597 (1972).

*Unbridled Discretion*. Beyond these as-applied problems, Movax Law has facial flaws. There is no standard provided to DHSS to regulate religious speech and none that governs local health departments in their indoctrination session requirements. Accordingly, this violates the unbridled discretion doctrine.

*Strict Scrutiny*. Each of the above constitutional violations triggers strict scrutiny. *City of Boerne v. Flores*, 521 U.S. 507, 509 (1997). Missouri cannot show that forcing parents to provide involuntary consent to vaccinating or the forfeiture of the child's bodily autonomy satisfies a compelling state interest in a narrowly tailored way. *Id*. Missouri cannot demonstrate that there are any compelling interests in treating religious exempting parents differently or in infringing upon their religious beliefs and religious speech to a school principal has any compelling state interest. In fact, compelling and banning the Parents' speech causes irreparable harm.

## STANDARD OF REVIEW

This Court reviews dismissals under Rules 12(b)(1) and 12(b)(6) de novo. *See Branson Label, Inc. v. City of Branson*, 793 F.3d 910, 914 (8th Cir. 2015); *United States ex rel. Ambrosecchia v. Paddock Labs., LLC*, 855 F.3d 949, 954 (8th Cir. 2017). And though this Court reviews preliminary injunction denials for abuse of discretion, an error of law constitutes an abuse of discretion. *Minn. Citizens Concerned for Life, Inc. v. Swanson*, 692 F.3d 864, 872 (8th Cir. 2012). This Court also makes "a fresh examination of crucial facts" when a preliminary injunction appeal raises constitutional claims. *Johnson v. Minneapolis Park & Recreation Bd.*, 729 F.3d 1094, 1098 (8th Cir. 2013) (cleaned up).

## ARGUMENT

These Parents are treated far differently when it comes to exercising their respective parental rights, religion, and their religious speech. Unlike any other parents of children attending a Missouri school, these Parents must endure a targeted gauntlet, designed only for them, in order to obtain the benefit of their child's education as well as safeguarding their child's bodily autonomy. They must endure these things because of Missouri's "peculiar" application of Movax Law. *Hurley*, 515 U.S. at 572. That law, like the one in *Hurley*, works to "alter the expressive content" of the Parents' private religious speech to a school administrator. If they want to exercise their religion, they must speak – and in order to speak they must endure indoctrination sessions directed

specifically to each one.  Then when permitted to speak they must host a government message that they do not wish to make of which also contradicts their beliefs. *Id*.

## I. "Modest Advocacy" and Location of the Government Message Within the Parents' Speech is Not a Factor for Compelled Speech

The lower court compounded its error by drawing a line between the location of the government message within Form 11 and then characterizing the message as "mild advocacy" directed only to a parent. The lower court ruled that the "official form containing modest advocacy is divided into parts which separate the advocacy language by the State from the wording to be used by a parent claiming an exemption. It thus passes muster as constitutionally acceptable." A.155.

The lower court's analysis is simply wrong. Whether government can require a citizen to host a government message does not depend on an endorsement of the message. The analysis is artificial and irrelevant. The intensity of the hosted government message is irrelevant. The location of the message is also irrelevant. And the message being purportedly directed to the one parent, even an audience of one counts. First Amendment rights do not turn on the size of one's audience. *United States Telecom Ass'n v. Fed. Commc'ns Comm'n*, 825 F.3d 674, 742 (D.C. Cir. 2016) ("The constitutionality of common carriage regulation of a

particular transmission medium thus does not vary based on the potential audience size.").

## II.  The Parents not only state claims that Movax Law violates their constitutional rights, but show they deserve a preliminary injunction to stop ongoing, irreparable harm.

For a 12(b)(6) motion to dismiss, courts must accept as true all pleaded facts and all inferences reasonably drawn from those facts. *McCaffree Fin. Corp. v. Principal Life Ins. Co.*, 811 F.3d 998, 1002 (8th Cir. 2016). To overcome this motion, the Parents need only allege facts that plausibly suggest a violation of the applicable law. *Id*. The Parents not only meet this low bar as they have plausibly suggested the violation of their First and Fourteenth Amendment rights, but also meet the requirements for an injunction given the current violation of these rights.

To obtain a preliminary injunction, the Parents must show a threat of irreparable harm, the balance of equities weighs in their favor, a probability of success on the merits, and the public will benefit from it. *Swanson*, 692 F.3d at 870. But when plaintiffs show a "likely violation" of their "First Amendment rights, the other requirements for obtaining a preliminary injunction are generally … satisfied." *Id*. This is true here. By establishing viable legal claims, the Parents necessarily establish likely success on the merits since there are no factual disputes on a motion to dismiss. Indeed, Missouri responded to the preliminary injunction motion below by raising the same legal arguments as its

19

motions to dismiss. In this scenario, this Court can and should instruct the district court to enter a preliminary injunction. *See McGlone v. Cheek*, 534 F. App'x 293, 299 (6th Cir. 2013) (issuing this instruction in same procedural context).

### A.    Movax Law compels the Parents' speech as-applied.

The "First Amendment guarantees 'freedom of speech,' a term necessarily comprising the decision of both what to say and what *not* to say." *Riley v. Nat'l Fed'n of the Blind of N.C.*, 487 U.S. 781, 796-97 (1988). This means a speaker has "the autonomy to choose the content of his own message." *Hurley*, 515 U.S. at 573. Central to this autonomy is a speaker's freedom to exercise "editorial control and judgment" over her message. *Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 258 (1974); *Jian Zhang v. Baidu.com Inc.*, 10 F. Supp. 3d 433, 437 (S.D.N.Y. 2014) ("[A]s a general matter, the Government may not interfere with the editorial judgments of private speakers on issues of public concern ...."). Movax Law violates this rule by forcing Parents to communicate to the school administrator requiring its pre-scripted document publishing a government message.  Parents using Form 11 must promote the same monolithic idea about their personal religious beliefs and vaccinating, as well as the DHSS message, which they object to – if they choose to exercise their right to religious beliefs utilizing the religious accommodation provision of 167.181.3.

A compelled speech claim has three elements: (1) speech, (2) that the speaker objects to, and (3) the government compels. *Cressman v. Thompson*, 798 F.3d 938, 951 (10th Cir. 2015). *Accord Hurley*, 515 U.S. at 572-73 (applying same elements). Parents satisfy each element, and that triggers strict scrutiny. *Pacific Gas & Elec. Co. v. Pub. Utils. Comm'n of Cal. (PG&E)*, 475 U.S. 1, 19 (1986) (plurality) (applying strict scrutiny to law compelling speech). Movax law triggers the compelled speech doctrine for three reasons: (1) the Parents engage in protected speech (private communication to a school administrator); (2) Movax Law compels them to speak in a certain manner (only using Form 11); and (3) the Parents object to doing so. *See id.*

### 1. The Parents' Private Communication to a School Administrator is protected speech.

The Parents want to express their own unique religious beliefs and religious objections to vaccine injecting privately to a school administrator. A.83-86 (¶¶134-36,154,159). This private written communication from parent to school administrator is pure speech fully protected by the First Amendment. Because the Parents' communications are pure speech, their process of communicating that is also pure speech. Courts protect the "process of creating a form of *pure* speech (even such as writing or painting)" to the same degree as "the product of these processes (the essay or the artwork) …." *Anderson v. City of Hermosa Beach*, 621 F.3d 1051, 1061-62 (9th Cir. 2010). *See also*

21

*Minneapolis Star & Tribune Co. v. Minn. Comm'r of Revenue*, 460 U.S. 575, 582 (1983) (protecting use of paper and ink products under First Amendment when used to publish newspapers).

The same logic applies to a Parent's original authorship sent to a school principal as sending one's blog or home movie. "It defies common sense to disaggregate the creation of the video from the video or audio recording itself. The act of recording is itself an inherently expressive activity; decisions about content, composition, lighting, volume, and angles, among others, are expressive in the same way as the written word or a musical score." *Animal Legal Defense Fund v. Wasden*, __ F.3d __, No. 15-35960, 2018 WL 280905, at *13 (9th Cir. Jan. 4, 2018). *See also Turner v. Lieutenant Driver*, 848 F.3d 678, 689 (5th Cir. 2017) ("There is no fixed First Amendment line between the act of creating speech and the speech itself"). Both the creation and contents of the Parents' speech implicate the Parents' First Amendment rights.

### 2. Movax Law compels the Parents' speech, not conduct.

Movax Law requires the Parents to publish DHSS messaging in their personal communication to the school. Movax Law does not respect the Parent's exercise of religion as well as demanding the Parent promote conceptions of vaccine injecting which they object. This requirement compels speech, not conduct.

The district court appears to assert that Form 11 and the associated indoctrination session requirement, regulated conduct, not speech, in requiring the forced "salesmanship" attendance. But this confuses facial and as-applied invalidity. In *Hurley*, the regulation forced the parade organizers to accept a message in their parade they did not want. 515 U.S. at 572-73. The law in *Hurley* did "not, on its face, target speech or discriminate on the basis of its content"; its "focal point" was stopping "the act of discriminating." 515 U.S. at 572. Nor does this conclusion change just because Movax Law might be characterized as regulating conduct on its face. Generally applicable laws can unconstitutionally compel speech as applied. As *Hurley* noted, while public accommodation laws "do not, as a general matter, violate the First or Fourteenth Amendments," they can if *applied* to compel speech. 515 U.S. at 572; *see also Turner*, 512 U.S. at 640 ("[T]he enforcement of a generally applicable law may … be subject to heightened scrutiny."). But the law still compelled speech because its "application … had the effect of declaring … speech itself [the parade] to be the public accommodation." *Id*. at 573. *Hurley* instructs courts to look beyond a law's text or purpose to whether it applies to speech. *Id*. at 572; *accord Telescope Media Group v. Lucero*, (TMG) 936 F.3d 740, 752, 758 (8th Cir. 2019) (making this point); 564 U.S. 789 (2011) *Brush & Nib Studio, LC v. City of Phoenix,* (*B&N*) 448 P.3d 890, 913-14 (Ariz. 2019) (same). And here the law does. It applies to the

Parents' speech to a school administrator compelling them to sign a pre-written statement with a government message.

Like the public accommodation law in *Hurley*, Movax Law facially regulates conduct and speech; yet, as applied, it compels the Parents to speak messages they would not want to convey. That triggers First Amendment scrutiny.

### 3. Movax Law compels the Parents to author content they object to.

Not only does Movax Law compel the Parents to convey speech; it compels them to convey speech with a message they object to.

Specifically, the Parents object to authoring the one-belief-fits-all Form 11 with its messaging that antagonizes their religious beliefs. A.78 (¶96). The government may not force someone to express "another speaker's message." *FAIR* at 63. That's why the Supreme Court has found compelled speech in situations where no one would attribute speech to the objector. *Wooley v. Maynard*, 430 U.S. 705, 715 (1977) (state's motto on license plate); *PG&E*, 475 U.S. at 6-7, 15 n.11 (newsletter attributed to someone besides objector). *Accord B&N*, 448 P.3d at 911-12 (rejecting misattribution argument).

In this way, the Parents mimic the parade organizers in *Hurley*. They "disclaim[ed] any intent to exclude homosexuals as such" and allowed individual members of the excluded LGBT group to march in the parade. 515 U.S. at 572-73. The organizers only objected to the LGBT

group marching as a unit under its own banner, which altered the parade's message as a whole. *Id*. DHSS is not being discriminated against in denying it access to the Parents' private communication to a school.

Other courts recognize this message/person distinction too. *See, e.g.*, *World Peace Movement of Am. v. Newspaper Agency Corp.*, 879 P.2d 253, 258 (Utah 1994) (holding that newspaper did not discriminate by declining religious person's religious advertisement because newspaper "may discriminate on the basis of content even when content overlaps with a suspect classification…").

There is no exception to the First Amendment as the lower court theorized. Giving speakers the freedom to control what they say may come at a cost when that freedom overlaps important topics that may be connected in some way to protected classes. DHSS certainly does not like the Parent's message religiously objecting but the effort "to produce thoughts and statements acceptable to some groups … grates on the First Amendment, for it amounts to nothing less than a proposal to limit speech in the service of orthodox expression. The Speech Clause has no more certain antithesis." *Hurley*, 515 U.S. at 579.

### 4. Movax Law deserves strict scrutiny for compelling the Parents to author Form 11 with content they object to.

Form 11 requires the parent's signature to the DHSS ghostwritten message. This signed form is then supposed to be sent from the Parent

to the school administrator to satisfy the 167.181.3 religious accommodation provision.

"Outside [the commercial speech] context," the government "may not compel affirmance of a belief with which the speaker disagrees." *Hurley*, 515 U.S. at 573. The "general rule" is that speakers have "the right to tailor" their speech. *Id*. It follows that laws compelling speech trigger strict scrutiny. *Cf. Riley at* 795-98 (1988) (applying strict scrutiny); *PG&E*, 475 U.S. at 19 (same). That too is the "general rule." *Evergreen Ass'n, Inc. v. City of New York*, 740 F.3d 233, 245 (2d Cir. 2014).

This general rule makes sense for two reasons. First, "the fundamental rule of protection under the First Amendment, [is] that a speaker has the autonomy to choose the content of his own message." *Hurley*, 515 U.S. at 573. Only strict scrutiny can safeguard such a fundamental freedom. Second, laws "[m]andating speech that a speaker would not otherwise make necessarily alters the content of the speech." *Riley*, 487 U.S. at 795. Such laws are therefore "content-based" and receive strict scrutiny. *Id. See also Stuart v. Camnitz*, 774 F.3d 238, 246 (4th Cir. 2014) (noting that a "regulation compelling speech is by its very nature content-based …").

These reasons also explain why the Supreme Court analyzes compelled speech differently than restricted speech. *See, e.g., Barnette*, 319 U.S. at 633 (noting that "involuntary affirmation could be commanded only on even more immediate and urgent grounds than

silence"). The district court therefore erred when it analyzed speech based on content or whether it did so in a "modest" fashion. *See United States v. O'Brien*, 391 U.S. 367 (1968) (analyzing restrictions on expressive conduct). Contrary to that analysis, laws that compel speech (or association that affects speech) do not impose incidental burdens; they imperil speaker autonomy and alter content by definition. They "directly and immediately" affect First Amendment freedoms. *Dale*, 530 U.S. at 659 (declining to apply *O'Brien* intermediate scrutiny test to law compelling association that impacted speech).

The only time that the Supreme Court applied intermediate scrutiny to a law that was claimed to compel speech was in *Turner*, 512 U.S. at 662, which involved a monopoly over an entire conduit for cable television that resulted in certain speech being shut off. Movax Law deserves strict scrutiny because *Turner* does not control this case.

In *Turner*, the Supreme Court encountered a law forcing cable companies to use some of their channels to transmit local broadcast stations' programming. 512 U.S. at 626-34. Although this "must-carry" requirement infringed on the cable companies' editorial freedom, the Supreme Court found this burden minimal and applied intermediate scrutiny. First, the cable companies acted as "a conduit for the speech of others [the broadcasters], transmitting it on a continuous and unedited basis…" *Id*. at 629. Pure conduits exercise less editorial control than other speakers. Second, the cable companies "unlike speakers in other

media" had the monopoly "bottleneck" power to exclude broadcasters because of the unique nature of the cable medium. *Id*. at 656. Third, the must-carry requirement was content-neutral. *Id*. at 644. The requirement was not "activated" by any particular programming the cable companies transmitted and did not grant access to particular "content" from broadcasters. *Id*. at 655. And fourth, the cable companies did not actually object to any content from the broadcasters. *See id*. at 647 (noting that law did "not compel cable operators to affirm points of view with which they disagree").

Take away any one of these reasons, and here all must be taken away, and *Turner*'s case for intermediate scrutiny falters. *Cf. Hurley*, 515 U.S. at 575-78 (declining to extend *Turner* when conduit and bottleneck factors absent); *Time Warner Cable, Inc. v. Hudson*, 667 F.3d 630, 640 (5th Cir. 2012) (noting that *Turner* applied intermediate scrutiny "only because the cable medium uniquely allowed for the bottleneck control …"); *Jian Zhang v. Baidu.com Inc.,* 10 F. Supp. 3d 433, 439 (S.D.N.Y. 2014) (declining to extend *Turner* on similar grounds). None of these reasons apply to the Parents.

*The Parents are authors, not conduits.* Unlike cable companies who transmit secondhand speech "on a continuous and unedited basis," the Parents communicate their own unique religious beliefs as well as their authorship communicating that to a school principal. *Turner*, 512 U.S. at 629. And like most speech creators, the Parents exercise a great degree

of editorial control: deciding how to express their religious viewpoint on natural immunities, bodily autonomy, or injection of foreign vaccines into their child. A.77-80, 83 (¶¶89-91, 99-107, 130-34).

Companies like Google, Yahoo, Microsoft, and Facebook have won similar cases protecting their editorial freedom to control their website content. *Langdon v. Google, Inc.*, 474 F. Supp. 2d 622, 630 (D. Del. 2007) (companies cannot be compelled to place advertisements on their webpages); *e-ventures Worldwide, LLC v. Google, Inc.*, No. 2:14-CV-646-FtM-PAM-CM, 2017 WL 2210029, at *4 (M.D. Fla. Feb. 8, 2017) (Google cannot be compelled to place certain results in search engine); *La'Tiejira v. Facebook, Inc.*, 272 F. Supp. 3d 981, 991 (S.D. Tex. 2017) (Facebook had "First Amendment right to decide what to publish and what not to publish on its platform.").

In this situation, the conduit "metaphor is not apt," because the Parents are much "more than a passive receptacle" for someone else's message; they actively "choose the content" of their religious beliefs and author the meaning of that content to the school. *Hurley*, 515 U.S. at 573, 575. If newspaper editors exercise enough editorial control to warrant strict scrutiny when they select pieces written by others, then surely the Parents exercise editorial control over their own private speech when they create speech from scratch. *Id*. at 575 (distinguishing cable companies from newspaper editors).

*The Parents cannot silence other speakers*. Unlike cable companies, the Parents do not exercise "bottleneck, or gatekeeper, control"; they cannot "silence the voice of competing speakers with a mere flick of the switch." *Turner*, 512 U.S. at 656. Indeed, the Parents cannot hinder, much less silence, DHSS in its publications or online statements. Regardless, what these Parents choose to express, other Parents can say whatever they want to a school principal.

*Movax Law compels speech in a content and viewpoint-based way*. Unlike the must-carry rules in *Turner*, Movax Law operates in a content and a viewpoint-based way in three respects. First, by compelling the Parents to convey a message they disagree with – rejecting natural immunities and endorsing vaccinating – Movax Law "necessarily alters the content" of what the Parents want to say. *Riley*, 487 U.S. at 795. That constitutes a "content-based regulation of speech." *Id*.

Second, Movax Law only applies to the Parents if they seek to convey a peculiar message content to a school administrator. If the Parents avoid exercising their religion and communicating that then they are safe. Movax Law is thus triggered or activated by the content of the speech the Parents seek to create and communicate to a school. And when a law is triggered by the content of speech, that law is content-based. *See PG&E*, 475 U.S. at 13-14 (explaining how law regulates based on content if "it was triggered by a particular category of … speech" or has "conditioned [access] on any particular expression" conveyed earlier);

*Missouri Broad. Ass'n v. Lacy*, 846 F.3d 295, 303 (8th Cir. 2017) (finding compelled speech where the business's obligation to speak was triggered by its decision to "include the name and address of a retailer in an advertisement"); *Baidu.com*, 10 F. Supp. 3d at 441.

Third, Movax Law awards access to the Parents' private speech to the school with viewpoints the Parents oppose. If the Parents seek to speak to a school principal about religiously objecting to vaccinations, Movax Law does not require the Parents to include a message advocating child hygiene or child safety seats. It only requires the Parents to author a message demeaning to their religious beliefs, the exact opposite viewpoint of what they want to convey. In this way, Movax Law is viewpoint-based because it awards "access … only to those who disagree with [the Parents'] views." *PG&E*, 475 U.S. at 14.

*Movax Law compels the Parents to speak a message they object to.* Finally, unlike the cable companies in *Turner*, the Parents object–on moral and religious grounds – to the content they are forced to convey. Nothing of the sort arose in *Turner*; the cable companies there apparently acted out of economic motives. In fact, "the FCC has acknowledged" that cable companies "may decline to carry an unaffiliated network … because it opposes the views expressed by the network …" *Time Warner Cable Inc. v. F.C.C.*, 729 F.3d 137, 156 (2d Cir. 2013). As this concession suggests, compelling someone to speak an objectionable message raises different and much greater concerns than those raised in *Turner*.

31

### i. Movax Law deserves strict scrutiny because there is no "educational" speech exception to the First Amendment.

Unlike the actual conduit found in *Turner*, the district court instead re-defined the DHSS messaging as permissible "salesmanship" and "education" as though a Parent is a kind of commissioned speaker – a conduit for DHSS speech. But a Parent is not a conduit. And commissioned speakers deserve just as much protection from compelled speech as non-commissioned ones.

Indeed, compelling objectionable speech imposes the same unacceptable burden on commissioned speakers as it imposes on others – it trespasses their "freedom of mind." *Wooley*, 430 U.S. at 714. The Supreme Court has already extended compelled speech protection to such speakers. *See Riley*, 487 U.S. at 784 (protecting for-profit fundraisers paid to speak someone else's message); *Hurley*, 515 U.S. at 574 (noting that right not to speak covered "professional publishers"). And courts have repeatedly explained that commissioned speakers retain just as much interest in their speech as those who receive it. *See, e.g., Simon & Schuster, Inc. v. Members of the N.Y. Crime Victims Bd.*, 502 U.S. 105, 116 (1991) (acknowledging that both author and publisher had First Amendments rights); *Anderson*, 621 F.3d at 1062.

The district court tacitly recognized that Form 11 contained a government message but reasoned this was permissible because it was a "form containing modest advocacy." These distinctions are all without a

difference. Whether speech is compelled does not depend on the degree or intensity of the government message being hosted. The lower court also reasoned that the location of the government message in Form 11 meant that a reader would understand which part of Form 11 was the Parent's speech ("is divided into parts which separate the advocacy language by the State from the wording to be used by a parent claiming an exemption. It thus passes muster as constitutionally acceptable"). The district court justified "mild advocacy" and location of the message exception on the grounds that no one would attribute the DHSS commissioned speech to the Parents. Attribution perceptions are irrelevant. The Supreme Court has repeatedly found compelled speech regardless of what observers think a speaker affirms. Thus, Missouri cannot force newspapers to print someone else's editorial, whether readers think newspapers agree with that editorial or not. *Miami Herald Pub. Co. v. Tornillo*, 418 U.S. 241, 243-46. Missouri cannot force companies to put someone else's statement in their newsletter, whether readers think those companies agree with that statement or not. *PG&E*, 475 U.S. at 15 n.11. And Missouri cannot force individuals to display the state's motto on their car, whether observers think the car owner agrees with that motto or not. *See Wooley*, 430 U.S. at 721 (Rehnquist, J., dissenting) (criticizing majority because car owner never put "in the position of either apparently to, or actually 'asserting as true' the message" objected to). As these cases show, the right to not speak does

not turn on what "a bystander would think.…" *Frudden v. Pilling*, 742 F.3d 1199, 1204-05 (9th Cir. 2014) (cleaned up).

Newspapers exemplify this point. No one thinks advertisements speak for the newspaper. But courts nonetheless protect the newspapers' right to decline advertisements as they see fit. *See, e.g., Groswirt v. Columbus Dispatch*, 238 F.3d 421, *2 (6th Cir. 2000) (holding that anti-discrimination law could not force newspaper to publish someone's paid letter because of First Amendment); *Langdon v. Google, Inc.*, 474 F. Supp. 2d 622, 629-30 (D. Del. 2007) (concluding that Google had First Amendment right to decline request to publish advertisement on search engine). Parents should have the same right.

The irrelevance of third-party perceptions also explains why disclaimers do not alleviate the Parents' injury like the district court thought (signed under protest). No matter what third parties think, the Parents still know what they are crafting and must convey what they cannot. That internal, psychological harm–creating and speaking the very thing you oppose – harms the freedom of mind and spirit in a way no disclaimer solves. *See, e.g., PG&E,* 475 U.S. at 15 n.11 (rejecting argument that disclaimer solved compelled speech); *Hurley*, 515 U.S. at 576 (stating the government cannot force "speakers to affirm in one breath that which they deny in the next").

Nor can Parents just slough off compelled speech by publishing someone else's speech or by speaking a disclaimer like the district court

claimed. While the Parents can express their views elsewhere they still cannot author their own religious expressions to the school administrator – the very thing they want, without fear of speaking an objectionable message. The government need not deter the Parents from speaking in every possible venue and every medium before the compelled speech doctrine protects them.

Finally, the district court's "mild advocacy" "salesmanship" and "education" exceptions are both limitless and dangerous. At one point the district court opined that the Parent could "disclaim" the message by signing under protest. Missouri seeks a novel and limitless power – the power to compel private speakers to speak any message the government wants. Its logic does not stop in the religious accommodation context; or at certain mediums or certain topics. If a citizen's right to be free within his own personal communications from hosting a government message depends upon the intensity or location of the inserted government message, then the entirety of First Amendment law is turned on its head. If Parents can always disclaim, and can always speak their views elsewhere, the mediums and topics compelled do not matter. That would allow the government to compel any parent to convey speech requested on any topic in any private medium. No speaker should have to suffer this. And no legal theory should allow it.

**B.      The Form 11 requirement bans speech based on content and viewpoint as-applied.**

Missouri applies Form 11 not only to compel the Parents to speak, but to ban their desired message. Missouri can no more ban the Parents' private statement to a school administrator than ban a group's statement indicating its intent to exclude certain messages from its parade. Or as this Court explained, banning a statement like the Parents "rests on a faulty premise." *TMG*, 936 F.3d at 757 n.5. "[I]n this case" Missouri "cannot compel [Parents] to speak, so it cannot force [them] to remain silent either." *Id*. But Parents are forced into silence unless Form 11 is utilized. Such content and viewpoint discrimination triggers strict scrutiny. *See Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2226 (2015) (imposing such scrutiny on restriction against speech based on "its message, its ideas, its subject matter, or its content").

While Parents satisfies the three-part test for compelled speech, the regulatory scheme goes even further. It compels Parents speech based on content and viewpoint. That too triggers strict scrutiny. *Church on the Rock v. City of Albuquerque*, 84 F.3d 1273, 1279 (10th Cir. 1996) (strict scrutiny for such restrictions). Just as the government cannot compel speech without satisfying strict scrutiny, it cannot restrict speech based on "its ideas, its subject matter, or its content" without satisfying strict scrutiny. *Reed v. Town of Gilbert* (cleaned up). A law restricts speech based on content if it facially draws distinctions based on a speaker's message or if it cannot be justified without reference to speech's content. *Id*. at 2227. A law restricts speech based on viewpoint when it "targets

not subject matter, but particular views taken by speakers on a subject."
*Rosenberger v. Rectors & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995).
The DHSS regulation fails all these tests.

The DHSS regulation controls the Parents' speech based on content and viewpoint in three ways. First, the regulation compels the Parents to speak content that each would not otherwise convey. This "necessarily alters the content" of her expression and constitutes "a content-based regulation of speech." *Riley*, 487 U.S. at 795. *Accord Nat'l Inst. of Family & Life Advocates v. Becerra (NIFLA)*, 138 S. Ct. 2361, 2371 (2018) (same); *B&N*, 448 P.3d at 912-14 (same as to law forcing art studio to create invitations celebrating same-sex wedding).

Second, the regulation punishes the Parents. Like many other "reasonable and sincere people," the Parents hold a "decent and honorable religious" view regarding the holiness of the human body as well as rejecting injections manufactured from aborted babies. *Obergefell v. Hodges*, 135 S. Ct. 2584, 2594, 2602 (2015). The regulation only punishes these Parents because they exercise a religious exemption as opposed to a medical exemption. In this way, the content of the Parents' speech triggers the application of the DHSS regulation. That makes the application content-based. *Tornillo*, 418 U.S. at 256 (statute "exacts a penalty on the basis of the content" because it required newspapers to print editorial only if they printed editorial with particular content earlier); *PG&E*, 475 U.S. at 13-14 (plurality) (law regulates based on

37

content if it "condition[s] [access] on any particular expression" conveyed); *TMG*, 936 F.3d at 753 (law applied in content-based way because it treated films on opposite-sex marriage "as a trigger for compelling [filmmakers] to talk about a topic they would rather avoid – same-sex marriages") (cleaned up).

Third, the DHSS regulation mandates access only to the particular viewpoints of particular parents' communications. If the Parents utilize a medical exemption, they are not required to host a message urging them to disregard their religion or to vaccinate. This only applies to Parents exercising a religious exemption.

The district court's view towards the Parents' private speech seems to more align itself with the regulation of commercial speech. This theory overlooks *Hurley*'s actual statement: that government can prescribe orthodoxy in commercial advertising by "requiring the dissemination of purely factual and uncontroversial information." 515 U.S. at 573 (cleaned up). And the DHSS regulation does not *compel* disclosures anyway as it does not involve anything to do with informed consent; Form 11 *restricts* speech.

Just as important, the Parents' desired statement to a school administrator is not commercial speech. It has nothing to do with proposing a commercial transaction; it discusses her private religious views to a specific person. *Harris v. Quinn*, 573 U.S. 616 (2014) (defining commercial speech). At the very least, the Parents statement contain

38

religious speech "inextricably intertwined with" the exercise of religion and parental consent and that triggers strict scrutiny. *Riley*, 487 U.S. at 796.

Strict scrutiny is warranted because Movax Law forbids the Parents from communicating their own unique religious objections to vaccine injecting their children to the school administrator. And Movax Law does so because of the statement's content and viewpoint. Indeed, Movax Law would allow the Parents to give a statement to the school administrator accepting vaccinating; they just cannot provide their own authored statement explaining their religious objection to it. The only difference is the content and viewpoint of those statements. *See Reed*, 135 S. Ct. at 2231 ("[A] speech regulation is content based if the law applies to particular speech because of the topic discussed or the idea or message expressed."); *Rosenberger at* 829 (finding viewpoint discrimination when restriction singles out "particular views on a subject").

These restrictions favor "inclusive" views on the topic of pro vaccination over others. That's viewpoint discrimination. *Matal v. Tam*, 137 S. Ct. 1744, 1751 (2017) (registration ban on just disparaging trademarks was viewpoint-based); *Tucker v. Cal. Dep't of Educ.*, 97 F.3d 1204, 1216 (9th Cir. 1996) (it was viewpoint discrimination for the government to ban a sign saying "gay marriage is a sin" but allowing a sign advocating "person's right to choose whatever mate he or she wishes"). In fact, because the DHSS regulation regulates the Parents'

speech based on viewpoint, it triggers strict scrutiny regardless whether the speech is commercial. *Matal*, 137 S. Ct. at 1767-69 (five justices agreeing that lower scrutiny did not apply to viewpoint-based restrictions on commercial speech); *Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 39 (2d Cir. 2018) (interpreting *Matal* this way). *Accord R.A.V. v. City of St. Paul*, 505 U.S. 377, 389 (1992) ("State may not prohibit only that commercial advertising that depicts men in a demeaning fashion."). So, no matter how Missouri construes the Parents' speech, its decision to control their speech triggers strict scrutiny.

Accordingly, the DHSS regulation is viewpoint-based, awarding "access … only to those who disagree with [Parents'] views." *PG&E*, 475 U.S. at 13-14 (law viewpoint-based because it did not award access to company's newsletter "to the public at large," only to those "who disagree with [the company's] views"); *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 654 (1994) (law in *PG&E* "conferred benefits to speakers based on viewpoint"). Viewpoint and content-based applications like these must overcome strict scrutiny.

### C.   Movax Law compels expressive association as-applied.

Besides protecting the right to speak, the First Amendment also protects the right to "associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984). The Parents seek this very thing: to "join together and speak" with others who share their

expressive purpose of promoting natural immunities and preserving the bodily integrity of their children. *FAIR*, 547 U.S. at 68. But Movax Law forces them to join together and speak with those who wish to express an opposing message about those subjects. This "impair[s]" their ability "to express [their] views, and only those views" and thus infringes their "freedom of expressive association." *Dale*, 530 U.S. at 648. Movax Law must therefore satisfy strict scrutiny. *Id.*

This conclusion does not change because the Parents are in a mandatory school system. A newspaper, for example, cannot be forced to associate with customers who want to print editorials or advertisements the newspaper objects to. *Tornillo*, 418 U.S. at 256-58. Nor can newspapers be forced to associate with editors who affect the newspaper's editorial judgment. *See McDermott v. Ampersand Pub., LLC*, 593 F.3d 950, 959–63 (9th Cir. 2010).

### D. Movax Law violates free exercise as-applied.

The Parents possess many religious beliefs regarding the abortion lineage of vaccines, natural immunity, and bodily integrity. As a result, they cannot participate in consenting to vaccine injecting their children. But Movax Law requires the Parents to do exactly this. In order to exercise their religion the Parents must travel to a local health department and be subjected to a religious inquisition specifically targeted to them only.

The hostility behind the DHSS regulations is even clearer when applied to the Parents. There are no limits set forth in Missouri statute 167.181 as to how or even what degree DHSS or the local health departments can impose religious speech regulations. The scheme allows individualized assessments by the local health department and creates gerrymandered exemptions that disfavor religion. A system of individualized assessments requires "case-by-case inquiries" that use a "subjective test" that allows officials to selectively burden religious exercise–such as an administrative process that uses a vague, "good cause" standard. *Axson-Flynn v. Johnson*, 356 F.3d 1277, 1297-98 (10th Cir. 2004) (cleaned up). The "Form 11" policy, as administrated by the local health departments and schools, fits this description to a tee. Missouri officials subjectively decide on a case-by-case basis when speakers can speak religiously. A secular speaker exercising a medical exemption can decline indoctrination sessions. *Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Comm'n,* (*Masterpiece I*) at1730-31. Religious speakers like the Parents cannot.

Parents are forced to attend indoctrination sessions as a condition for school, and the exercise of religion and speech. The First Amendment does not tolerate forced attendance, much less forced participation in an indoctrination session. *See, e.g.*, *Lee v. Weisman*, 505 U.S. 577, 586 (1992) (holding that school could not force students' "attendance and participation" in a graduation benediction). And under the DHSS

regulation, local health departments are free to set out their own arbitrary and burdensome requirements for a parent to exercise her religion or make her religious speech to a school administrator. That's not unusual. It's one of the many problems with a *system* of individualized assessments–a "pattern of ad hoc discretionary decisions" not confined to one "written policy" or law. *Axson-Flynn*, 356 F.3d at 1297-99.

Besides compelling participation, Movax Law also targets one religious view. And though courts often uphold neutral and generally applicable laws, they apply strict scrutiny to laws hostile towards religion – either facially or as-applied. *See Lukumi*, 508 U.S. 520, 534 (1993) (invalidating facially neutral law that in application created a "religious gerrymander[ ]" to suppress a disfavored religious ritual). Missouri's application of Movax Law raises similar concerns as those addressed in *Lukumi*.

For example, Missouri shows its favoritism by creating a system of individualized assessments and exemptions to enforce Movax Law. This lacks neutrality. *Id.* at 537 (condemning law enforced though "individualized governmental assessment of the reasons for the [allegedly unlawful] conduct" because individualized assessments too easily target religious beliefs in application). This vague standard gives Missouri leeway to "devalue [ ] religious reasons" for declining to create speech. *Lukumi*, 508 U.S. at 537.

43

Moving from neutrality to general applicability, Missouri does not require all people or even all children to be vaccinated. As to school aged children, it provides three exceptions: medical, religious, and in-progress. Not all parents of school aged children are required to attend these indoctrination sessions. Parents of in-progress and medical exempt students are not similarly required to undergo forced state "education." Only the parents exercising a religious objection are subjected to this treatment. This under-inclusiveness is fatal. *See Lukumi*, 508 U.S. at 543; *Fraternal Order of Police Newark Lodge No. 12 v. City of Newark*, 170 F.3d 359, 365 (3d Cir. 1999) (explaining that categorical exemptions may show discriminatory intent).

Movax Law also triggers strict scrutiny under the hybrid-rights doctrine. In *Employment Division v. Smith*, the Supreme Court found that strict scrutiny applies in "hybrid situation[s]" where a free-exercise claim is linked with "other constitutional protections, such as freedom of speech." 494 U.S. 872, 881-82 (1990). Like selective applications, applications that burden religious exercise and a companion constitutional right also trigger strict scrutiny. *Axson-Flynn*, 356 F.3d at 1295-97 (recognizing hybrid-rights doctrine). This doctrine applies when a companion constitutional claim is "colorable," meaning "a fair probability or likelihood, but not a certitude, of success on the merits." *Id*.

The standard that best comports with *Smith* requires someone raising a hybrid-rights argument to present a "colorable claim that a companion right has been violated." *Miller v. Reed*, 176 F.3d 1202, 1207 (9th Cir. 1999); *see Axson-Flynn v. Johnson*, 356 F.3d 1277, 1295-97 (10th Cir. 2004) (similar). The Parents meet this standard because they have already shown that Movax Law compels and restricts their speech. That makes their claims far more than just colorable and triggers strict scrutiny under the hybrid-rights doctrine. If the hybrid-rights doctrine carries any weight, it at least justifies ratcheting from rational or intermediate to strict scrutiny when a law burdens protected speech–opposed to applications that burden no protected speech.

In this case the Parents assert six intertwined fundamental rights involving such rights as freedom of speech and freedom of religion. At the very least, 167.181.3, coupled with the DHSS regulation with its Form 11 requirement, colorably infringes these rights, particularly since the Supreme Court considers compelling and restricting religious speaker's paradigmatic hybrid-rights violations. *Emp't Div., Dep't of Human Res. of Or. v. Smith*, 494 U.S. 872, 881-82 (1990) (citing historic examples). *Accord TMG*, 936 F.3d at 759 (confirming this principle).

The plaintiffs desire the benefit of school. The seminal vaccination case of *Jacobson v. Massachusetts*, 197 U.S. 11 (1905) referred to the exercise of police power regarding health and safety in vaccinating for the smallpox epidemic. *Jacobson* viewed the power under a rationality

review and never held there was a compelling state interest to vaccinate. When *Jacobson* was decided, the Supreme Court had not yet defined substantive due process in terms of personal autonomy. *Jacobson* was decided before application of the First Amendment. *See* B. Jessie Hill, The Constitutional Right to Make Medical Treatment Decisions: A Tale of Two Doctrines, 86 TEX. L. REV. 277, 296 n.82 (2007) ("*Jacobson* was a Lochner-era case. The doctrine of substantive due process was of course liberally applied in the Lochner era but largely to strike down laws on the grounds that they interfered with economic rights, not fundamental personal rights"). The Supreme Court's current substantive due process jurisprudence has long since evolved. "The central tenet of the Supreme Court's vast bodily integrity jurisprudence is balancing an individual's common law right to informed consent with tenable state interests, regardless of the manner in which the government intrudes upon an individual's body." *Guertin v. State,* 912 F.3d 907, 919 (6th Cir. 2019). The body of law now protects not so much individual economic liberty as individual "privacy," "dignity," and "autonomy." *Id. See Lawrence v. Texas*, 539 U.S. 558, 578 (2003) (ruling that the "right to liberty under the Due Process Clause" encompasses "the personal and private life of the individual"); *Thornburgh v. Am. Coll. of Obstetricians & Gynecologists*, 476 U.S. 747,772 (1986) (protecting right to make decision that is "basic to individual dignity and autonomy"); *Roe v. Wade*, 410 U.S. 113, 153 (1973) (recognizing a "right of privacy" that is "founded in the

Fourteenth Amendment's concept of personal liberty"); *Griswold v. Connecticut*, 381 U.S. 479, 485 (1965) (referring to the "zone of privacy created by several fundamental constitutional guarantees"). Hybrid rights apply in this matter. While generally applicable and neutral laws sometimes trigger minimal scrutiny, laws without these characteristics face greater hurdles. *Church of the Lukumi Babalu Aye, Inc. at* 531 (strict scrutiny); *Masterpiece I*, 138 S. Ct. at 1732 (per se invalidation of non-neutral application). The Missouri statutory and regulatory scheme as applied to the Parents falters for the same three reasons the Supreme Court condemned in *Masterpiece I* and *Lukumi*.

The fact that a compelling interests test has not been applied to vaccine injections was specifically acknowledged by Judge Scalia in *Employment Div., Dept. of Human Resources of Ore. v. Smith* where writing for the majority, stated "if the 'compelling interest' test is to be applied at all, then, it must be applied across the board, to all actions thought to be religiously commanded" and that "many laws will not meet the test." *Id.* at 888. Judge Scalia reasoned in *Smith* strict scrutiny would include "compulsory vaccination laws." *Smith* at 888. Judge Scalia cited the mandatory vaccination law of Arkansas and the case of *Cude v. State*, 237 Ark. 927, 377 S. W. 2d 816 (1964). *Id* at 889 ("According to the great weight of authority, it is within the police power of the State to require that school children be vaccinated against smallpox"). The *Cude* court did

not consider today's Federal bodily autonomy jurisprudence when it justified vaccinations under a police power doctrine.

### E. Movax Law violates equal protection as-applied.

The Equal Protection Clause guarantees "that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Laws that make distinctions among similarly situated groups that affect fundamental rights receive "the most exacting scrutiny," *Clark v. Jeter*, 486 U.S. 456, 461 (1988), and discriminatory intent is presumed. *Plyler v. Doe*, 457 U.S. 202, 216-17 (1982) ("[W]e have treated as presumptively invidious those classifications that … impinge upon the exercise of a 'fundamental right.'"). Missouri's application of Movax Law impinges the Parents' fundamental rights including that to free speech and free exercise, so strict scrutiny applies.

The Parents are similarly situated to other Missouri parents of school aged children, but Missouri treats these groups differently depending on their view about vaccinating. Parents who support vaccinations are not required to host any government messaging in their communications with the school administrator and are not required to be "educated" at a local health department or be callously coaxed to disregard their religious beliefs regarding vaccines. Parents exercising a medical exemption to vaccinating are not subjected to this. Parents like

these appellants who have religious beliefs objecting to vaccine injecting are.

Courts frequently find equal protection violations when laws treat speakers unequally. *See Police Dept. of City of Chicago v. Mosley*, 408 U.S. 92, 94-98 (1972) (holding that unequal treatment of picketers based on message violates equal protection).

### F. Movax Law violates the unconstitutional conditions doctrine as applied.

The government "may not deny a benefit to a person on a basis that infringes his constitutionally protected interests – especially his interest in freedom of speech." *Perry*, 408 U.S. at 597.

When the government requires citizens to relinquish one constitutional right as a condition of exercising another constitutional right, that condition "presents an especially malignant unconstitutional condition." *Bourgeois*, 387 F.3d at 1324; *see also Lefkowitz v. Cunningham*, 431 U.S. 801, 807-08 (1977) (explaining that the unconstitutional conditions doctrine applies to forfeiting "one constitutionally protected right as the price for exercising another").

Here, Missouri conditions the child's education on a forfeiture of bodily integrity, informed consent, and religious beliefs. Missouri conditions the Parents' First Amendment right to religiously speak to a school administrator on their willingness to forfeit their rights to be free from government-compelled speech, to freely exercise their religion, and

to equal protection of the laws. To allow this "would in effect … penalize[] and inhibit[]" these freedoms by letting the government "produce a result" indirectly that it "could not command directly." *Perry*, 408 U.S. at 597.

### G.    As Interpreted by Missouri 167.181.3 and 19 CSR 20-28.010(1)(C)(2) allow unbridled discretion.

The enabling language of Missouri statute 167.181 specifically limits DHSS authority to promulgate rules: it is limited to disease and vaccinations –religious speech is not included: "shall promulgate rules and regulations governing the immunization against poliomyelitis, rubella, rubeola, mumps, tetanus, pertussis, diphtheria, and hepatitis B, to be required of children attending public, private, parochial or parish schools. Such rules and regulations may modify the immunizations that are required of children in this subsection. The immunizations required and the manner and frequency of their administration shall conform to recognized standards of medical practice." A medical standard has nothing to offer in guiding DHSS in regulating a Parent's religious speech.

To comply with the Fourteenth Amendment, laws must give people an understanding of what is prohibited and provide minimal guidelines for enforcement officials. *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). These requirements are more stringent for speech restrictions. *Murphy v. Matheson,* 742 F.2d 564, 569 (10th Cir. 1984).

In a similar vein, the First Amendment forbids laws that "delegate overly broad … discretion" to government officials or "allow[] arbitrary application," because "such discretion has the potential for becoming a means of suppressing a particular point of view." *Forsyth Cty. v. Nationalist Movement*, 505 U.S. 123, 130 (1992).

There is no statutory enabling authority provided to DHSS in 167.181 to regulate a parent's religious speech made to a school administrator. But even if this statute actually did that, there is no standard provided other than "recognized standards of medical practice" which has nothing to say about a parent's private communication about her religious objections to vaccinating made to a school principal. Yet DHSS promulgated 19 CSR 20-28.010(1)(C)(2) which requires a parent's statutory 167.181.3 communication to the principal be made using an original Form 11. There is no standard to govern DHSS or the local health departments in creating this *de facto* speech licensing scheme requiring Parents to travel to a local health department and be subjected to targeted hostility designed to intimidate or otherwise coerce the Parent in foregoing the exercise of her religious convictions.

With no standard, DHSS and the local health departments have unbridled discretion to regulate a parent's speech that in turn allows that parent to exercise her religion. Compliance is left to Missouri's sole discretion. Accordingly, 167.181.3 and 19 CSR 20-28.010(1)(C)(2) violate the unbridled discretion doctrine.

*Unbridled Discretion*. A law violates the unbridled discretion doctrine if it (1) "delegate[s] overly broad … discretion to a government official" or (2) "allows arbitrary application," because "such discretion has the potential for becoming a means of suppressing a particular point of view." *Forsyth Cty. v. Nationalist Movement*, 505 U.S. 123, 130 (1992). 167.181.3 and 19 CSR 20-28.010(1)(C)(2) does both. Movax law essentially functions as a vehicle to retaliate against the Parents for exercising their religious beliefs. It gives officials unbridled discretion to burden and act in a hostile fashion to Parents exercising a religious objection to vaccine injections while favoring speech that supports vaccinating. This kind of arbitrary enforcement power is facially unconstitutional and as applied to the Parents.

The district court's response was dismissive to any First Amendment concerns and was, in fact, quite supportive in characterizing the targeted activities as the "most obviously useful opportunity for last-minute persuasion would be in that document. Plaintiffs fail to show why DHSS should be deprived of its opportunity for effective salesmanship." The district court gave a free pass to this conduct saying that "my supposition has been that the procedure is used to control use of the forms, and to assure that a parent receives the message from the State." The lower court held that it was a "process" that is a "State law or procedure that can and should be resolved by State officials, including the state judiciary if necessary." State procedure is still subject to a

higher Federal authority. The lower court's analysis eviscerates Constitutional restraints upon State law and procedure. The lower court's analysis does not bar challenges to laws that grant too much enforcement authority at any level of government. *Act Now to Stop War & End Racism Coal. v. District of Columbia*, 846 F.3d 391, 409-10 (D.C. Cir. 2017).

This unbridled discretion also factors into the aimed hostility against the Parents: "the prohibition against unbridled discretion [as] a component of the viewpoint-neutrality requirement." *Southworth v. Bd. of Regents of the Univ. of Wis. Sys.*, 307 F.3d 566, 579 (7th Cir. 2002). It follows that the unbridled discretion doctrine applies wherever the prohibition against viewpoint discrimination does – everywhere. Therefore, 167.181.3 and 19 CSR 20-28.010(1)(C)(2) must indeed comply with the unbridled discretion doctrine; they fail to do so.

### H. Movax Law fails strict scrutiny as-applied.

Setting these other problems aside, the mandatory vaccination law requires parental consent, which in turn is completely eviscerated when coupled with the criminal penalty for not attending school. In order to exercise their religious faith, Missouri requires submission to an intended gauntlet: a religious speech license obtained only by submission to government "education." The lower court actually lauded DHSS in its targeted indoctrination sessions specifically designed to persuade each

Parent from following her religious beliefs – after all because she is the one who most "needs" this secular re-education. The logic is repugnant to First Amendment principles. The entire scheme deserves strict scrutiny for burdening the Parents' religious exercise in ways inconsistent with our nation's history and tradition. Laws that do this must always overcome strict scrutiny. *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171, 190 (2012) ("The contention that *Smith* forecloses recognition of" well-established historical precepts "rooted in the Religion Clauses has no merit"). *See Kennedy v. Bremerton Sch. Dist.*, 139 S. Ct. 634, 637 (2019) (Alito, J., concurring) (criticizing *Smith* because that decision "drastically cut back on the protection provided by the Free Exercise Clause" but noting that the case before the Court did not ask to revisit *Smith*). And we know burdening these Parents falls outside this tradition because *Smith* itself recognized the historical anomaly of compelling and silencing religious speakers.

Because applying Movax Law to the Parents violates their six fundamental Constitutional rights, this application must survive strict scrutiny – the "most demanding test known to constitutional law." *City of Boerne v. Flores*, 521 U.S. 507, 534 (1997). To do so, Missouri must prove that the application of its statutes and regulation narrowly serves a compelling interest. *Reed*, 135 S. Ct. at 2226. Missouri can do neither. It was claimed, on bare assertions of the State's counsel, that Form 11 served a function in identifying student vaccination history.  It does not.

Turning to compelling interest, the district court never reached that question but did opine that Missouri was justified under the lower court's *needed – last chance - salesmanship* justification. But strict scrutiny "look[s] beyond broadly formulated interests" to consider "the asserted harm of granting specific exemptions to particular … claimants." *Gonzales v. O Centro Espirita Beneficente Uniao de Vegetal*, 546 U.S. 418, 431 (2006). In other words, Missouri must identify an "actual problem in need of solving" and then limit its restriction only as "necessary to the solution." *Brown v. Entm't Merchs. Ass'n*, 564 U.S. 786, 799 (2011) (cleaned up).

Compelling and silencing the Parents' speech does not make children safer or healthier. And a religious accommodation law has no "legitimate end" when they compel speakers like that. *Hurley*, 515 U.S. at 578. *Accord TMG*, 936 F.3d at 755 (reaching same conclusion about public accommodation law compelling films and silencing statements); *B&N*, 448 P.3d at 914-15 (same as to art studio). Missouri can promote vaccinations without eviscerating consent and without compelling or silencing the Parents. Missouri has not proved any actual problem. "[A]necdote and supposition" do not suffice; Missouri must prove an "actual problem … in this case." *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 822-23 (2000).

Overlooking this problem, the district court believed only these religious adherents "needed" targeted "salesmanship." But this

purported interest is not neutral and takes Missouri's vaccination purpose as "overrid[ing] all conflicting individual rights and liberties." *B&N*, 448 P.3d at 923-24. In contrast, *Masterpiece I* "clearly contemplated that some exemptions … were permissible." *Id.* Courts should balance the interests – not just consider government beliefs about vaccines but also consider these Parents and their children because "[f]orcing free and independent individuals to endorse ideas they find objectionable is always demeaning…." *Janus v. Am. Fed'n of State, Cty., & Mun. Emps., Council 31*, 138 S. Ct. 2448, 2464 (2018).

As for narrow tailoring, Missouri falters here because compelling and silencing the Parents is not "the least restrictive means among available, effective alternatives." *Ashcroft v. ACLU*, 542 U.S. 656, 666 (2004). Not all Missouri citizens are required to be vaccinated. Not all students are so required. This under-inclusivity undermines any basis for requiring vaccinating and under penalty of law. *Reed*, 135 S. Ct. at 2232 (law "cannot be regarded as protecting an interest of the highest order … when it leaves appreciable damage to that supposedly vital interest unprohibited.") (cleaned up).

## CONCLUSION

The Parents want Missouri's bullseye off them and their religious beliefs. They seek to exercise their religion and their religious speech without being subjected to hostility by the state of Missouri. The Parents seek the benefit of school for their children without relinquishing their

56

fundamental parental rights. Their claims going to bodily integrity and parental rights in association with these First Amendment rights justify a hybrid rights analysis. To restore their freedoms, the Parents ask this Court to reverse, reinstate their lawsuit on all counts, and instruct the lower court to enter a preliminary injunction protecting their constitutional freedoms.

Dated: March 1, 2020

Respectfully submitted,

s/ Linus L. Baker
Attorney for Plaintiffs Appellants

# CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 12,980 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a 14-point proportionally spaced Times New Roman typeface using Microsoft Word 2019.

Date: March 1, 2020     s/ Linus L. Baker
               Linus L. Baker

## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that a copy of the forgoing APPELLANTS' OPENING BRIEF, and addendum, as submitted in Digital Form via the court's ECF system, is an exact copy of the written document filed with the Clerk and has been scanned for viruses with the most recent version of a commercial virus scanning program, Norton 360, and are free of viruses according to that program. In addition I certify all required privacy redactions have been made.

Date: March 1, 2020                    /s/ Linus L. Baker
                                        Linus L. Baker

# CERTIFICATE OF SERVICE

I hereby certify that on March 1, 2020, an accurate copy of the foregoing was electronically filed with the Court using the CM/ECF system, which will send notification of such filing to the following:

ROBERT HATLEY
**MISSOURI ATTORNEY GENERAL'S OFFICE**
615 E. 13th Street, Suite 401
Kansas City, MO 64106
(816) 889-2250
robert.hatley@ago.mo.gov

GRANT WIENS
**MICKES O'TOOLE, LLC**
12444 Powerscourt Drive, Suite 400
St. Louis, MO 63131
(314) 878-5600
gwiens@mickesotoole.com

ANGUS DWYER
**SPENCER FANE LLP**
1000 Walnut Street, Suite 1400
Kansas City, MO 64106
(816) 474-8100
adwyer@spencerfane.com

Date: March 1, 2020

s/ Linus L. Baker
*Attorney for Plaintiffs/Appellants*

60

# ADDENDUM

1) District Court's Memorandum Ruling (11/22/2019)

2) District Court's Order (11/26/2019)

3) District Court's Order (12/17/2019)

4) District Court's Order (1/10/2020)

5) District Court's Order (1/30/2020)

B.W.C., J.R., MYKALA N. MARTIN, BRIAN ROBINSON, MICHAEL
W. CHEEK, I.E.G.M., LINDA D. CHEEK, AMBER ROBINSON, W.B.,
ZACH BAKER, and AUDREY BAKER,

*Plaintiffs-Appellants*,

v.

RANDALL WILLIAMS, in his official capacity as Director of the
Missouri Department of Health & Senior Services, CLEVER R-V
SCHOOL DISTRICT, MILLER COUNTY R-III SCHOOL DISTRICT,
BOBBIE GRANT, in his individual capacity, CHRISTINA STAMPER,
in her individual capacity, CROSSROADS ACADEMY-CENTRAL
STREET, KARIS PARKER, in her individual capacity, EVA
COPELAND, in her individual capacity, ERIC S. SCHMITT, in his
official capacity as Attorney General of Missouri,

*Defendants-Appellees*,

**APPELLANTS' ADDENDUM**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| **W.B.,** a minor, by and through his parents and next friend, **Zach Baker** and **Audrey Baker** et al. | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) Civil No. 4:19-cv-00682-HFS |
| **Crossroads Academy-Central Street** et al. | ) ) ) |
| Defendants | ) ) |

## MEMORANDUM RULING

Missouri school children are required to be vaccinated, but the statutory requirement contains an exemption for use by parents and children having objections on religious grounds. A small child currently enrolled at Crossroads Academy in Kansas City and his parents (the Bakers) have a grievance concerning the form of exemption claim used by the Missouri Department of Health & Senior Services (DHSS), the agency charged with enforcement of the law. A handwritten claim for exemption was rejected by the school officials. A "sample" exemption form available online is not acceptable to the agency or the school. The Bakers decline further effort to submit the approved form. There is thus a procedural impasse, temporarily avoided by an order proposed by the parties.

The wording of the DHSS form is now in controversy because the parents contend it expresses favorable views about vaccinations and is objectionable both as governmental speech and because it allegedly requires adoption of disfavored language by the parents.

Before the court is the Bakers' motion for a preliminary injunction.[1] The motion will be denied, thus terminating the Stipulated Temporary Restraining Order (Doc. 20) previously entered to protect the child from suspension or expulsion. Absent further judicial protection the child may attend school if vaccinated or if a State-approved exemption form is submitted to the school.

Although the litigants have submitted quite extensive briefing, the basic issues are not difficult. Vaccination obligations have long been approved by the courts, with or without religious exemptions. The State's freedom to advocate vaccination as governmental policy is also well settled. The official form containing modest advocacy is divided into parts which separate the advocacy language by the State from the wording to be used by a parent claiming an exemption. It thus passes muster as constitutionally acceptable.

---

[1] The parents have separately filed motions, each seeking "preliminary and permanent injunction." Docs. 2 and 4. They both seek to maintain the status quo. Briefing deals with issues pertinent to preliminary injunction. It is premature to consider permanent relief. For clarification I will deal only with relief against State and school officials pending litigation. My denial of a permanent injunction at this time will be without prejudice.

2

Argument that the form should be available outside of public health offices does not present a Federal question of substance. My supposition has been that the procedure is used to control use of the forms, and to assure that a parent receives the message from the State. In any event, that process is a matter of State law or procedure that can and should be resolved by State officials, including the state judiciary if necessary. This proceeding under 42 U.S.C. § 1983 does not cover questions of state law.

I.    Mandatory Vaccination Authority

Plaintiffs seek to enjoin enforcement of the Missouri statute which makes it "unlawful for any student to attend school unless he (or she) has been immunized as required under the rules and regulations of the department of health and senior services, and can provide satisfactory evidence of such immunization," subject further to exemptions based on "religious beliefs or medical contraindications." Section 167.181(2) and (3), RSMo. The Bakers recognize that in 1905 the Supreme Court sustained the constitutionality of required vaccinations in <u>Jacobson v. Massachusetts</u>, 197 U.S. 11, but contend that constitutional law has progressed in their favor since then. Doc. 5, pp. 11-15. As of a century ago, it was well settled that vaccination as a "condition precedent to the attendance of children upon schools in their communities is a valid exercise of the

police power for the prevention of disease and the preservation of health."

Herbert v. Demopolis School Bd. of Educ., 73 So. 321 (Ala. 1916)(citing Jacobson and State authorities). The most current State and Federal decisions also uniformly support vaccination requirements, including governmental advocacy of vaccinations, despite various scientific, religious, family autonomy and general libertarian objections by parents. See, e.g., V.D. v. State, 2019 WL 3886622 (E.D.N.Y.)(and cases cited); In re K.Y.-B, 215 A.3d 471 (Md. App. 2019)(with rationale and cases cited). Jacobson continues to represent well-established law that a parent "has no constitutional right to an exemption" from vaccination requirements. Nicolao v. Lyon, 875 F.3d 310, 316 (6th Cir. 2017). See also Phillips v. City of New York, 775 F.3d 538, 542-3 (2d Cir. 2015). Plaintiffs cite no vaccination litigation rulings to the contrary, despite the prevalence of controversy on this subject from a significant group of protesters. New York Times, Sept. 24, 2019, page 1 ("Debate Over the Shots Required for School Heats Up Again").[2]

---

[2] To the extent plaintiffs seek a reconsideration of settled law, based on various theories never judicially related to vaccination programs, perhaps such reconsideration is available at the appellate level or when considering a permanent injunction. Plaintiffs erroneously suggest a pertinent change of law by reason of the Religious Freedom Restoration Act (RFRA), which "applies only to the federal government." George v. Kankakee Community College, 2014 WL 6434152 *5 (C.D. Ill.). Predictions that contraception-related decisions invoking RFRA would result in a "flood of religious objections" to Federal medical procedures such as vaccinations (Burwell v. Hobby Lobby Stores, Inc., 573 U.S. 682, 732 (2014)) have apparently not been borne out. Any alleged violation of the Missouri RFRA (Section 1.302.1, RSMo) is not before me. Use of supplemental jurisdiction would not be welcome in this dispute which currently centers on administrative practice in Missouri.

4

II.    The Religious Exemption Form

A.  Governmental Advocacy of Vaccination

A copy of the disputed DHSS form is reproduced by the Bakers in the

father's brief supporting a preliminary injunction. Doc. 5, p.6. The DHSS message,

comprising the top half of the form, states as follows:

> "We strongly encourage you to immunize your child, but ultimately the decision is yours. Please discuss any concerns you have with a trusted healthcare provider or call the immunization coordinator at your local or state health department. Your final decision affects not only the health of your child, but also the rest of your family, the health of your child's friends and their families, classmates, neighbors, and community.
>
> Unimmunized children have a greater risk of contracting and spreading vaccine-preventable diseases to babies who are too young to be fully immunized and those who cannot be immunized due to medical conditions. in the event of an outbreak of vaccine-preventable disease within a particular facility, children who are not fully immunized or do not have documented laboratory evidence of immunity shall not be allowed to attend school or day care until the local health authority declares the designated outbreak or health emergency has ended."

Although the Bakers say they have religious scruples against

 vaccination,  they are not entitled to insist on governmental silence rather than

advocacy. Advocacy of vaccination by Michigan State officials was specifically

approved in Nicolao, supra, in accordance with accepted principles allowing

governmental advocacy of practices to effectuate the public policy of the State.

The members of the Supreme Court, in dicta, recently again recognized the

5

governmental right to speak in support of its programs, mentioning vaccinations. Walker v. Texas Div., Sons of Confederate Veterans, 135 S.Ct. 2239, 2245-6, 2255 (2015).

### B. Targeted Use, "Captive Audience"

Assuming the State's right to advocate vaccination of school children, plaintiffs are apparently particularly resentful of the State's advocacy in the upper half of the form which parents are to use to claim religious objections.[3] The most obviously useful opportunity for last-minute persuasion would be in that document. Plaintiffs fail to show why DHSS should be deprived of its opportunity for effective salesmanship.

In the name of Equal Protection, plaintiffs complain about the targeting process, which may better be considered as a claim of underinclusiveness – that is, limitation of the message to address particular groups, in this case parents wishing to assert religious objections. The Supreme Court recently agreed with such an objection, but in a very different context. NIFLA v. Becerra, 138 S.Ct. 2361, 2275-6 (2018). In appropriately publicizing the availability of family planning

---

[3] One of the problems in plaintiffs' briefing is that they treat this case as pitting one set of religious beliefs against another, thus invoking issues of neutrality. While Missouri law gives them free rein to label their beliefs as religious in nature, and the court has no role in appraising sincerity, the State's imposition of vaccination requirements must be considered secular in nature – otherwise the whole program would be unconstitutional. As in flag salute or national anthem controversies, persons with religious objections may deserve accommodation, but have no legal right to cripple activities that are appropriately designated as secular.

6

facilities that offered abortions, but requiring posting in facilities that opposed abortions, the Court concluded that "California cannot co-opt the licensed facilities to deliver its message for it." In this case, the State is using its own facilities to deliver its message. No case is cited that would bar effective salesmanship by the State, targeting the group most needing its message.

The Supreme Court has endorsed a freedom of speech choice of venue, over objections by utility company customers to billing inserts of a controversial nature. Consolidated Edison Company of N.Y. v. Public Service Commission, 447 U.S. 530 (1980). Even under the enhanced protections of the Missouri RFRA, the Missouri Supreme Court recently sustained a requirement that an abortion provider supply a prospective patient with a booklet containing the State's message on the subject. It held this did not impermissibly infringe on the woman's rights, at least when there was no requirement that she read the booklet. Doe v. Parson, 567 S.W.3d 625 (Mo. banc 2019); Compare, Doe v. Parson, 388 F.Supp.3d 1345 (E.D.Mo. 2019), appealed 3/20/19. The advocacy here is considerably less intrusive. As in the Consolidated Edison case, the recipient can easily escape full exposure to objectionable material if that is his or her choice. 447 U.S. at 542.

C. No "Compelled Speech"

7

The parental signature at the bottom of the religious exemption form serves to verify the required parental inserts of the child's name, the types of vaccination objected to, and the grounds for the exemption, simply asserted as "religious." Filling in, signing and submitting the form in no way comments on or endorses the State's message, quoted above, which is separated on the form by a line dividing the upper and lower portions and clearly identified as DHSS language. Any fanciful contentions to the contrary are not reasonably supported by the document, read as a whole. Moreover, plaintiffs' complaints are not part of their "religious" objections, which would be satisfied by release from the vaccination requirement.

The nearest legal problem area may be in the contention that contraception opponents should not be required to be "complicit" in the procedure by filing exemption forms. See, Wheaton College v. Burwell, 573 U.S. 958 (2014). In this situation, however, the filing of forms does not advance vaccination use but simply results in an exemption.

For the reasons stated, it is quite unlikely that plaintiffs will ultimately prevail in obtaining an injunction against the State and school officials.

III.    Preliminary Injunction Considerations

Under the Eighth Circuit's familiar Dataphase standards, a trial court

dealing with a preliminary injunction motion needs to consider (1) the threat of

irreparable harm to the movant, (2) the balance between such harm and the

injury likely inflicted on other parties, (3) the plaintiffs' likelihood of success on

the merits, and (4) the public interest. Dataphase Sys. Inc. v. CL Sys., Inc., 640 F.2d

109 (1981). Where a party is unlikely to succeed on the merits, as here, this may

be the predominant consideration in denying relief.

The other factors, considered together, likewise favor denial of the motion.

Assuming plaintiffs continue to have strong objections to vaccinations they can

readily obtain an official exemption form, execute it, and submit it, thus obtaining

the desired exemption from vaccination. Possible harm to the child, by

suspension from school, would be the result of parental failure to obtain, execute

and submit the DHSS religious exemption form which can be acquired by much

less effort than writing a brief. The "key to the school-house" is available and

would protect the child from harm – without needing a court order. The harm to

the State's program resulting from granting the motion would be unpredictable,

but a preliminary injunction would encourage disregard for the program,

particularly since an order would be likely publicized. The balance of harm thus is

a factor favoring the State defendants. The public interest also favors the defense,

assuming the vaccination program significantly safeguards public health. Taking

notice of the adoption of such programs nationwide I have no reason to conclude

otherwise, and plaintiffs have not alerted me to a desire to present a battle of

experts.[4]

For the foregoing reasons, plaintiffs' motions for a preliminary injunction

and permanent injunction (Docs. 2 and 4) will be DENIED, with prejudice as to a

preliminary injunction, and without prejudice as to a permanent injunction. In the

interest of allowing any desired submission of the completed and executed DHSS

religious exemption form, or orderly appellate filings if ripe, the Clerk is instructed

to record a DENIAL of the preliminary injunction aspect of the motions on

December 16, 2019. To the extent plaintiffs have also moved for a permanent

injunction (See footnote 1) the Clerk should then record a DENIAL WITHOUT

PREJUDICE of the motions for a permanent injunction.

SO ORDERED.

/s/ Howard F. Sachs

**HOWARD F. SACHS**
UNITED STATES DISTRICT JUDGE

November 22 , 2019

Kansas City, Missouri

---

[4] Plaintiffs have sought a hearing on the motion, but even if there are some marginal and immaterial factual disputes the motion can be and is being decided on the legal issues.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

W.B., a minor, by and through his parents and ) 
next friend, **Zach Baker** and **Audrey Baker** et al. )
                                )
                      Plaintiffs, )
                                )
v.                                        )       Civil No. 4:19-cv-00682-HFS
                                )
**Crossroads Academy-Central Street** )
et al.                                   )
                                )
                      Defendants )

## ORDER

The individual defendants, Parker and Copeland, are the principal and

school nurse at the school attended by the plaintiff Bakers' child. Counts 7 and 8

seek damages against them under 42 U.S.C. § 1983. Motions to dismiss those

counts have been filed (Doc. 41), contending that any violation of plaintiffs' rights

under § 1983 would be protected from liability under the rule of qualified

immunity, that is, because there is no "clearly established" law that they have

violated.

The major complaint against these individuals, according to the amended

complaint, is their rejection of plaintiffs' handwritten document asserting a

religious objection to vaccinations, and allegedly another form identified on the

Internet as a "sample." Plaintiffs were allegedly told they needed to execute the

DHSS form available at governmental offices or the child would no longer be eligible to attend school.

Because of a recent ruling denying to plaintiffs a preliminary injunction (Doc. 52), based in large part on the conclusion that they are unlikely to prevail on the merits, I necessarily conclude that it is unsound to contend there has been a violation of "clearly established" law.

Plaintiffs argue at some length that Missouri law does not authorize suspensions or expulsions for failures to submit religious exemption forms, and that the forms are not authorized by the vaccination legislation. As indicated in the prior ruling, questions of Missouri law violations as such are not properly before me in this case. Bagley v. Rogerson, 5 F.3d 325, 328 (8th Cir. 1993).

Defendants are also correct in noting in Doc. 42, p. 8, that plaintiffs cannot rely on "broad general propositions" in seeking to avoid qualified immunity defenses, and have failed to cite particularized government action, previously ruled invalid, such as to give notice to defendants of a known violation. Kelsay v. Ernst, 933 F.3d 975 (8th Cir. en banc 2019) (and cases cited).

For the reasons stated here and in Doc. 52, and also in the briefing by the individual defendants, the named defendants' motion (Doc. 41) is GRANTED and Counts 7 and 8 should be and are hereby DISMISSED.[*]

/s/ Howard F. Sachs

**HOWARD F. SACHS**
UNITED STATES DISTRICT JUDGE

November 26, 2019

Kansas City, Missouri

---

[*] I have noted some commingling by plaintiffs in referring to proposed injunctive relief against defendants in Counts 7 and 8, presumably for future actions. The school itself is referred to in injunction claims in other counts, and those injunctive claims remain to effectuate any relief that might ultimately be granted.

3

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

**W.B.,** a minor, by and through his parents and )
next friend, **Zach Baker** and **Audrey Baker** et al. )
)
               Plaintiffs, )
)
v. )       Civil No. 4:19-cv-00682-HFS
)
**Crossroads Academy-Central Street** )
et al. )
)
               Defendants )

## ORDER

Pursuant to the Memorandum Ruling of November 22, 2019 (Doc. 52),

plaintiffs' motions for preliminary and permanent injunction (Docs. 2 and 4) are

ruled accordingly. Relief sought for a preliminary injunction is DENIED with

prejudice. Relief sought for a permanent injunction is DENIED without prejudice.

The Clerk of the Court is directed to enter this Order consistent with the

above ruling.

SO ORDERED.

                         /s/ Howard F. Sachs

                   **HOWARD F. SACHS**
                   UNITED STATES DISTRICT JUDGE

December 17, 2019

Kansas City, Missouri

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

W.B., a minor, by and through his parents and )
next friend, **Zach Baker** and **Audrey Baker** et al. )
)
            Plaintiffs, )
)
v. )       Civil No. 4:19-cv-00682-HFS
)
**Crossroads Academy-Central Street** )
et al. )
)
           Defendants )

**ORDER**

As indicated in my November ruling (Doc. 54), this case involves parents
and children seeking to retain school attendance while declining required
vaccinations, as permitted by Missouri's statutory permission for religious
exemptions, <u>W.B. by and through Baker v. Crossroads Academy-Central Street</u>,
2019 WL 6257963 (W.D.Mo.). The State Defendants, the Attorney General and
the Director of the Missouri Department of Health & Senior Services (DHSS), have
filed a motion to dismiss, now fully briefed. (Doc. 57). The motion will be granted,
largely based on the rationale described as the likely result in the November
ruling denying plaintiffs a preliminary injunction.[1] In my view the reasons are
generally simple and fairly obvious, despite voluminous briefing, particularly by

---

[1] It was there concluded at *3, "it is quite unlikely that the plaintiffs will ultimately prevail…"

1

plaintiffs. There is little need for much elaboration beyond what was said in the November ruling.

The State Defendants challenge their status in the litigation and also seek a ruling that plaintiffs are not injured. The Attorney General apparently has no role in enforcing the vaccination system and will be dismissed for that reason. DHSS does have statutory responsibility for monitoring and enforcing the system (Section 167.181(1), R.S.Mo.), and the Director will not be dismissed on procedural grounds. There is a continuing controversy regarding entitlement of children to school attendance without using an exemption form required by DHSS through its regulations. I accept plaintiffs' theory that they are sufficiently "injured" by the current system to challenge it on Constitutional grounds, as they seek to do. But I conclude, adopting as final the tentative reasoning in the November ruling, that there are no sound Constitutional grounds for plaintiffs' objections. I will not retain supplemental jurisdiction to consider nine State law questions currently presented by plaintiffs[2] and will therefore grant the State Defendants' motion to dismiss without prejudice to any State law claims the plaintiffs may have.

---

[2] Listed in Doc. 3, p. 2-3, Baker v. Crossroads Academy-Central Street, Case No. 20-CV-0003-HFS, a recently removed case.

The November ruling will be supplemented by the following commentary.

Although the amended complaint alleges special problems relating to certain schools and school districts, these individual issues are unrelated to the statute, regulations and forms promulgated by DHSS and therefore are not dealt with in this ruling, or briefed by plaintiffs in opposing dismissal of the claims against the State Defendants. (Doc. 60). The statute itself, which honors a religious objection to vaccinations, is targeted in plaintiffs' briefing only if, contrary to their claim, the exemption form prepared by DHSS is deemed authorized by the statute. (Doc. 60, p. 27). If deemed authorized, plaintiffs claim the statute delegates such extensive authority to DHSS that it usurps the legislative power of the State. Cases on this point cited by plaintiffs deal with generalities not impacted by the system here adopted; the delegation of authority to an administrative agency here is quite routine, considering the text at the top of Form 11 and how it is used.

Form 11, and its use, is central to plaintiffs' complaint, and especially the text at the top of the form that encourages parents to vaccinate their children and warns of the adverse public health risks of a failure to vaccinate. Because a reader's review of the November ruling is desirable and perhaps necessary, the text of the DHSS message on the form (at *2) will not be repeated. Plaintiffs

3

continue to claim a Constitutional defect in governmental advocacy of vaccination, placement of the advocacy on the form that claims a religious exemption, the targeting of objectors by limiting distribution to persons intending to seek a religious objection, and a theory that signing and submitting the form constitutes compelled speech (insofar as the document has text unnecessary to an exemption claim). This was all dealt with, rather summarily, in the November ruling, but is reargued as some 20 points in the brief opposing dismissal. (Doc. 60).

I again conclude that if the State wishes to require vaccination of school children, there is an unbroken collection of cases confirming that it can do so. It can also advocate vaccination, as noted by the Supreme Court in Walker v. Texas Div. Sons of Confederate Veterans, 135 S.Ct. 2239, 2245-6, 2255 (2015). Such advocacy (right or wrong) deals with public health issues. It is entirely secular in nature and motive, not "hostile to religion." For instance, it would not be hostile to a religious objection to eating pork for an agency to certify that pork is safe to eat. The certification, like the DHSS language here, is religiously neutral.

Plaintiffs fail to cite anything suggesting that the selection of students covered is unconstitutionally limited. There is also no case-law cited by plaintiffs tending to show that parents are subject to a compelled speech regime when the DHSS message appears at the top of the exemption form that they are required to

4

fill out. The text is in no way ambiguous as to the source of the vaccination recommendation.[3]

Giving plaintiffs credit for interesting citations and perhaps some sound lecturing on Constitutional law, there is a failure to tie the theories expressed to the alleged factual situation here. In my view, the Form 11 controversy does not present a colorable claim of Federal law violation.

As previously stated, any issues of Missouri law that plaintiffs wish to pursue can best be dealt with in State court, where, to the extent there is novelty, a prediction of what a Missouri court would do is inappropriate, when litigation in State court is feasible.

The State Defendants' motion to dismiss (Doc. 57) is hereby GRANTED, without prejudice to any State law claims that plaintiffs may have.


SO ORDERED.

_ /s/ Howard F. Sachs_
Howard F. Sachs, District Judge
UNITED STATES DISTRICT COURT

Dated: January 10, 2020

---

[3] If parents wish to express disagreement with the recommendation there is nothing to show that schools or DHSS would reject the religious exemption form if a parent wrote "we disagree" in an empty space on the document, or scratched out the recommendation language, which has served its purpose when appearing on the document as a "reminder" to parents seeking an exemption. Contrary to plaintiffs' contention, the DHSS message is conveyed when there is parental action executing the form. The State is not trying to educate school personnel, the recipients of the ultimate form. By my suggestion here, I do not suggest that such a marked-up form should be accepted, but merely indicate that plaintiffs have not exhausted possible efforts to show disapproval of the DHSS message, without endangering school attendance by their children.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| **W.B.,** a minor, by and through his parents and next friend, **Zach Baker** and **Audrey Baker** et al. | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil No. 4:19-cv-00682-HFS |
| **Crossroads Academy-Central Street** et al. | ) ) ) | |
| Defendants | ) ) | |

## ORDER

Rulings are needed on several motions in this vaccination-objector case which should complete action here, subject to an appeal.

Litigation began with a complaint against State Defendants, Crossroads Academy-Central Street (Crossroads), and two Crossroads employees. The claims against the employees have been dismissed (Doc. 53) and the claims against the State Defendants have also been dismissed (Doc. 69). Crossroads now seeks a dismissal (Doc. 70). Plaintiffs resist dismissal on procedural grounds but also because they are fearful that Crossroads is seeking a final dismissal of State law claims that are part of their case. Crossroads responds that it simply seeks to be placed in the same status as the State Defendants. Because plaintiffs' claims

against Crossroads are derivative, for carrying out State law and regulations, Crossroads is entitled to a dismissal, but without prejudice as to State law claims.

Two school districts (Clever R-V School District and Miller County R III School District) have been sued to prevent their carrying out the same State law and regulations, and they seek dismissal of the claims against them. (Doc. 54). Consistently with the ruling relating to Crossroads, the two school districts will be dismissed, but also without prejudice to any State law claims. My ruling on the merits regarding the State Defendants (Doc. 69, based in part on my denial of a preliminary injunction, Doc. 52) governs treatment of the claim against the school districts.

Defendants Grant and Stamper, employees of one of the school districts, seek dismissal (Doc. 54) for reasons used in dismissing the claims against the Crossroads employees. They are entitled to relief for the same reasons (Doc. 53).

Although there are several other motions listed as pending (Docs. 67 and 73), they will be mooted by this ruling, which I believe disposes of this litigation, subject to appeal and to pursuant to any pertinent State law claims.

It is therefore ORDERED that the school and school districts' motions to dismiss (Docs. 54 and 70) are GRANTED without prejudice as to any State law claims.

It is further ORDERED that the motion to dismiss of individual defendants Grant and Stamper (Doc. 54) be GRANTED without prejudice as to any State law claims.

All additional pending motions are DISMISSED as moot.

SO ORDERED.

/s/ Howard F. Sachs

**HOWARD F. SACHS**
UNITED STATES DISTRICT JUDGE

January 30, 2020
Kansas City, Missouri